## BEAR LAKE AND RIVER WATER WORKS AND IRRIGATION COMPANY *v.* GARLAND *et al.*

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 48. Argued May 6, 1896. — Decided October 19, 1896.

On the 16th of August, 1889, a statute was in force in the Territory of Utah providing for the creation of mechanic's liens for work done or materials furnished under contracts in making improvements upon land; but, in order to enforce his lien a contractor was required, within 60 days after completion of the contract, to file for record a claim stating his demand, and describing the property to be subjected to it; and no such lien was to be binding longer than 90 days after so filing, unless proper proceedings were commenced within that time to enforce it. On that day G. contracted with an irrigation company to construct a canal for it in Utah. He began work upon it at once, which was continued until completion, December 10, 1890. He claimed, (and it was so established,) that, after crediting the company with sundry payments, there was still due him over $80,000, for which amount he filed his statutory claim on the 23d day of the same December. On the 1st day of October, 1889, the company mortgaged its property then acquired, or to be subsequently acquired, to a trustee to secure an issue of bonds to the amount of $2,000,-000, the proceeds of which were used in the construction of the company's works, including the canal. On the 12th of March, 1890, the legislature

of Utah repealed said statute, and substituted other statutory provisions in its place, and enacted that the repeal should not affect existing rights or remedies, and that no lien claimed under the new act should hold the property longer than a year after filing the statement, unless an action should be commenced within that time to enforce it. On the 1st day of May, 1890, C. contracted with the company to do work on its canal, and did the work so contracted for. The balance due G. not having been paid, he brought an action to recover it, making the company, the mortgage trustees, and C. defendants, which action was commenced more than 90 days after the filing of his claim. To this suit C. replied, setting up his mechanic's lien. The court below made many findings of fact, among which were, (29th,) that the right of way upon which the canal was constructed was obtained by the company under Rev. Stat. § 2339; and, (33d,) that the work done by G. and C. respectively had been done with the consent of the company after its entry into possession of the land. Exception was taken to the 29th finding as not supported by the proof. The court below gave judgment in favor of both G. and C., establishing their respective liens upon an equality prior and superior to the lien of the mortgage trustees. *Held:*

(1), That this court will not go behind the findings of fact in the trial court, to inquire whether they are supported by the evidence;

(2), That G.'s action was commenced within the time required by the statutes existing when it was brought;

(3), That the judgment of the court below thus establishing the respective liens of G. and of C. was correct.

A clause in a mortgage which subjects subsequently acquired property to its lien is valid, and extends to equitable as well as to legal titles to such property.

Under Rev. Stat. §§ 2339, 2340, no right or title to land, or to a right of way over or through it, or to the use of water from a well thereafter to be dug, vests, as against the government, in the party entering upon possession, from the mere fact of such possession, unaccompanied by the performance of labor thereon; and, as the title in this case did not pass until the ditch was completed, the mortgage was not a valid incumbrance until after the liens of G. and of C. had attached, and will not be held to relate back for the purpose of effecting an injustice.

The act of March 12, 1890, is to be construed as a continuation of the act in force when the Garland contract was made, extending the time in which an action to foreclose its lien should be commenced; and, as this was done before the time came for taking proceedings to effect a sale under the lien, it was not an alteration of the right or the remedy, as those terms are used in the statute.

THE appellants appealed from a judgment of the Supreme Court of the Territory of Utah, affirming a judgment of the District Court of the First Judicial District of the Territory

in favor of the respondents, William Garland and Corey Brothers & Company.

The action was brought by the plaintiff, William Garland, against the Bear Lake Company, the Jarvis-Conklin Mortgage Trust Company, as trustees, Corey Brothers & Company, and others, for the purpose of enforcing an alleged mechanic's lien in favor of the plaintiff, and against the Bear Lake Company, for work done by the plaintiff for that company in the construction of its canal from its initial point — the Bear River cañon — for a distance of twelve miles on both sides of the river. The complaint alleged that on the 16th of August, 1889, the plaintiff and the Bear Lake Company entered into a contract for the construction by plaintiff of the portion of the work above mentioned, and under that contract the plaintiff commenced work on the 31st of August, 1889, and continued it to and including December 10, 1890. Various payments on account of the work were made the plaintiff, and, after crediting the same, the plaintiff alleged there was still due him from the Bear Lake Company, at the time of filing his claim for a lien, (December 23, 1890,) the sum of $80,250.50, and interest thereon, as set forth in the complaint. The Jarvis-Conklin Mortgage Trust Company and Corey Brothers & Company and the other defendants were made parties to the action as subsequent mortgagees or other incumbrancers. The answer of the Mortgage Trust Company set up the fact that it was the mortgagee in a mortgage executed by the Bear Lake Company · to it as trustee on the first day of October, 1889, to secure the payment of $2,000,000 of the bonds of the mortgagor company, and that such mortgage covered all the water rights, franchises, lines of canal and other property upon the whole or any part of which the plaintiff claimed a lien, and that the mortgage also by its terms covered all after-acquired property of every kind. The mortgage was duly recorded in Box Elder County, Utah, November 14, 1889; in Bear Lake County, Idaho, December 24, 1889; in Weber County, Utah, February 6, 1890. The bonds secured by the mortgage were all delivered between October 1, 1889, and February 1, 1891, and in large part paid for, and the balance was to be paid for

by drafts drawn upon the Mortgage Company by the treasurer of the Bear Lake Company as fast as the money was needed to pay for the construction of the works. At the time the plaintiff Garland entered into the contract already mentioned and when he commenced work thereunder, the statutes of Utah provided for a mechanic's lien, under the provisions of which a contractor within sixty days after the completion of his contract was to file for record with the county recorder a claim stating his demand, and giving a description of the property to be subjected to the lien. By § 3814, s. 1065, no lien provided for by the chapter upon liens was to bind any of the property longer than ninety days after the claim was filed, " unless proceedings be commenced in a proper court within that time to enforce the same." 2 Compiled Laws of Utah, 1888, 406, from § 3806 to and including § 3820. The answer further set up the fact that while the above act was in force, and on the 12th of March, 1890, the legislature of Utah passed an act in relation to mechanic's liens, and section 32 thereof repealed the former and above-mentioned lien act, but added the following proviso: " Provided, that the repeal of said acts or parts of acts, or any of them, shall not affect any right or remedy, nor abate any suit or action or proceeding existing, instituted or pending under the laws hereby repealed."

The answer then set forth that the plaintiff did not commence his action to enforce his lien within the ninety days given by the act in force when the work was commenced under the contract, and therefore the lien no longer existed at the time the action was commenced to enforce it.

The answer of Corey Brothers & Company was in the nature of a cross complaint, and set up the fact that they entered into a contract with the Bear Lake Company on the first of May, 1890, to construct certain portions of the canal of the company, and that between such date and the fifth of December, 1890, they did the work provided for in the contract, and on the seventh of January, 1891, they filed their claim for a lien for the balance of the money due them under the contract, (which was about eleven thousand dollars,) and

they asked for a decree enforcing their lien as a prior incumbrance to that of the mortgage upon the property of the Bear Lake Company.

The Bear Lake Company set up the same facts as a defence against the plaintiff's cause of action that were alleged by the Mortgage Trust Company, and it answered the claim of Corey Brothers & Company by alleging that the mortgage to the Mortgage Trust Company had been executed and duly recorded, and was in existence long before and at the time of the execution of the agreement which Corey Brothers & Company made with the Bear Lake Company, and that, therefore, the lien of Corey Brothers & Company was subsequent and subject to the lien of the mortgage upon the after-acquired property of the Bear Lake Company.

No question arises with reference to the other defendants.

The case came on for trial upon the issues thus found, and the court, after hearing the evidence, gave judgment in favor of plaintiff and of Corey Brothers & Company establishing their liens, respectively, upon an equality, and making them prior and superior to the lien of the Mortgage Trust Company by reason of its mortgage, and decreeing the sale of the property to satisfy such liens. *Garland* v. *Bear Lake Irrigation Co.*, 9 Utah, 350.

*Mr. John F. Dillon,* (with whom was *Mr. Harry Hubbard* and *Mr. Henry M. Beardsley* on the brief,) for appellants.

I. As to Garland's claim.

(*a*) Whatever right to a lien and remedy Garland may have had, at least as against the Jarvis-Conklin Mortgage Trust Company, existed only under §§ 3806 to 3820 inclusive of the Compiled Laws of Utah, 1888. Those statutes required him to bring his action within ninety days from the time of filing his claim for a lien. He did not bring his action until long after the ninety days had expired, and thus permitted his right and remedy to lapse, and neglected to obtain a lien.

(*b*) He can have no lien under the act of March 12, 1890, prior to the lien of the mortgage. The mortgage was made

October 1, 1889. It was recorded in November and December, 1889, and February, 1890. The mortgage, therefore, was made and recorded, and was an existing lien on March 12, 1890. It is clear, therefore, that the act of March 12, 1890, could not displace this existing lien of the mortgage or give any other lien priority over it. If, therefore, Garland looks to the act of March 12, 1890, for his lien, he must fail, for that act could not give him any lien prior to the lien of the mortgage. *Wabash & Erie Canal Co.* v. *Beers*, 2 Black, 448; *Murray* v. *Gibson*, 15 How. 421; *United States* v. *Heth*, 3 Cranch, 399; *McEwen* v. *Den*, 24 How. 242.

It follows, therefore, that for the labor and material furnished by Garland prior to March 12, 1890, he can have no lien by virtue of the act of that date, and that the mortgage to the Jarvis-Conklin Mortgage Trust Company is prior to any lien which is or can be given to him by the act of March 12, 1890, whether it be for work done prior to March 12, 1890, or for work done after that date. In other words, if the right of Garland to a lien and a remedy therefor depend upon the act of March 12, 1890, he can have no lien prior to the mortgage.

The principle of law is well settled that in case a statute creates a right or liability not known to the common law, and provides a remedy for the enforcement of such right or liability, and limits the time within which the remedy must be pursued, the remedy forms a part of the right or liability and must be pursued within the time prescribed or the right and remedy are both lost. *Boyd* v. *Clark*, 8 Fed. Rep. 849; *Finnell* v. *Southern Kansas Railway*, 33 Fed. Rep. 427; *Halsey* v. *McLean*, 12 Allen, 438; *The Harrisburg*, 119 U. S. 199.

It is also well settled law that in case a repealing statute provides that the right and the remedy under the statute repealed shall not be affected, the repeal leaves both the right and the remedy unaffected, and any person in order to avail himself of the right must pursue the remedy prescribed, and within the time prescribed by the repealed statute. *Wilkerson* v. *Hudson*, 71 Mississippi, 130; *Cochran* v. *Taylor*, 13 Ohio St. 382; *Gilleland* v. *Schuyler*, 9 Kansas, 569; *Wright*

v. *Oakley*, 5 Met. (Mass.) 400 ; *Fitzpatrick* v. *Boylan*, 57 N. Y. 433.

II.  As to Corey Brothers & Company's claim.

Corey Brothers & Company have no lien prior to the mortgage for the reason that their contract was not made until May 1, 1890, and they did not begin work until after that time; whereas the mortgage to the Jarvis-Conklin Mortgage Trust Company was made October 1, 1889, and recorded in November and December, 1889, and February, 1890: The Supreme Court of Utah was mistaken both as to the facts and as to the application of law.  The attorney for the Jarvis-Conklin Mortgage Trust Company excepted to finding 29 as follows: "The court erred as to finding of fact 29, for the reason that there is no evidence in this case upon which to base the said facts there stated, nor any one of them.  The evidence does not support such finding, and there is no pleading upon which to base the same."

It is well settled that a mortgage can be made of after-acquired property and that the mortgage thus made and recorded has priority over any lien which is subsequent in point of time.  *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459 ; *Tailby* v. *Official Receiver*, 13 App. Cas. 523 ; *Holroyd* v. *Marshall*, 10 H. L. Cas. 191 ; *Pennock* v. *Coe*, 23 How. 117 ; *McCaffrey* v. *Woodin*, 65 N. Y. 459 ; *Phillips* v. *Phillips*, 4 DeG., F. & J. 208.

The theory of the Utah court that, although the mortgage covered after-acquired property, yet the parts of the property on which Corey Brothers & Company did their work did not come into existence until such labor was performed, and that therefore they were entitled to a lien prior to the mortgage, is not tenable, for the reason that the equity of the mortgagee is at least equal to that of Corey Brothers & Company, and their mortgage was long prior in time.  The mortgage was made in October, 1889, and recorded in November and December, 1889, and February, 1890, and bonds were issued and large sums of money advanced under the mortgage, including sums which went to pay Garland for his work, at least amounting before May 1, 1890, to $386,318.98, all which was long prior

to May 1, 1890, when Corey Brothers & Company began to perform their labor. This prior making of the mortgage and actual advancing of the moneys created an equity, which was, to say the least, equal to that of Corey Brothers & Company.

The Bear Lake Company had title to water rights and rights of way by appropriation long before the contract with Corey Brothers & Company. The court, however, is clearly in error in supposing that as to government land the Bear Lake Company did not have property rights in their canal before the work was performed thereon by Corey Brothers & Company. Long before Corey Brothers & Company made their contract or did any work the company had begun the construction of its canal. Garland, who performed the largest part of the labor in constructing the canal, began his work so long prior thereto as August 31, 1889. The route of the canal had been selected and work had been done thereon by Garland long prior to May 1, 1890. The Bear Lake Company were clearly the owners before May 1, 1890, of all parts of the canal on which work had thus been done prior to that date, and on those parts clearly Corey Brothers & Company were, even on the theories advanced by the Supreme Court of Utah, entitled to no lien.

In the case of *Sullivan* v. *Northern Spy Mining Co.*, 11 Utah, 438, a question arose under Rev. Stat. § 2339, whether in case a person entered upon the public lands of the United States and dug a well, the right of such person to the use of the waters of such well thus acquired by possession was superior to the right of the person who afterwards purchased the land from the United States. The question turned on whether the right to enter upon land for the purpose of digging a well was a right recognized and acknowledged by the "local customs, laws and decisions of courts" of Utah; and the Supreme Court of the Territory of Utah held that it was, and that the person who thus entered upon the land and dug the well had a right to the use of its waters prior to the right of the person who afterwards purchased the land. The court held that the provisions of § 2780 of the Compiled Laws of Utah of 1888 applied. It is clear, therefore, that, "under the laws and cus-

toms and decisions of the courts of Utah," the Bear Lake Company acquired a property right in its water rights and right of way long prior to May 1, 1890.

The following authorities show that in the case of an appropriation of water or water rights, or rights of way therefor the ditch or canal or other work need not be fully completed in order to secure the priority given and recognized by Rev. Stat. § 2339 and by the laws and customs of the Pacific States. It is sufficient if the work has been begun and is being prosecuted with due diligence. *Kelly* v. *Natoma Water Company*, 6 California, 105; *Dyke* v. *Caldwell*, 18 Pac. Rep. 276; *Irwin* v. *Strait*, 18 Nevada, 436.

If the Bear Lake Company was not the owner, then Corey Brothers & Company had no right to the lien under the provisions of the act of March 12, 1890.

In the case of *Nelson* v. *Clerf*, 4 Washington, 405, the court held that under the statute of Washington, which, in this respect, is not substantially different from the statute of Utah, a mechanic's lien cannot be enforced against a working company for the construction of its ditch, unless it appears that the company owns or has an interest in the land through which the ditch is constructed. See *Tritch* v. *Norton*, 10 Colorado, 337, to the same effect.

Corey Brothers & Company entered upon the land and did their work under and in privity with the Bear Lake Company which had long prior thereto made and recorded its mortgage to the Jarvis-Conklin Mortgage Trust Company. Corey Brothers & Company therefore entered with full notice of the mortgage, and, being in privity with the Bear Lake Company, are bound by the estoppel created by the mortgage.

Even on the theory advanced by the Supreme Court of Utah, that if the lands over which the Bear Lake Company constructed its canal were public lands, and if, further, the Bear Lake Company did not acquire title to such public lands until after Corey Brothers & Company began their work, still the decision of the court was erroneous, for the reason that this theory would apply only in the case of lands over which the canal was constructed which were public lands, and on which

Corey Brothers & Company did their work, and the route of the canal was, according to the finding of the court, only in part over public lands. The judgment of the court, therefore, even on its own theory, should, at the most, have been limited to giving a lien to Corey Brothers & Company as respects the public lands over which the canal was constructed by them, but the lien could not attach to even this part for the reason that the statutes of Utah, act of March 12, 1890, make no provision for a lien upon a part of a canal or other work.

*Mr. Sanford B. Ladd,* (with whom was *Mr. John C. Gage* on the brief,) for Garland, appellee.

*Mr. Arthur Brown* for Corey Brothers & Company, appellees.

Mr. Justice Peckham, after stating the case, delivered the opinion of the court.

The contest in this case lies between the plaintiff and the firm of Corey Brothers & Company on the one hand and the Mortgage Trust Company on the other. The former demand priority of lien for their respective claims over that of the mortgage held by the Mortgage Trust Company upon the property of the Bear Lake Company.

It will be convenient to separately examine these claims.

First. As to the plaintiff's alleged lien. At the time when the plaintiff entered into his contract and commenced work under it the lien law of 1888 was in force, one of the sections of which, § 3810, s. 1061, provided that the lien mentioned in the act was to be preferred to any other which might attach subsequently to the time when the building, improvement, or structure was commenced, work done, or materials were commenced to be furnished. As the work of the plaintiff under his contract was commenced on the 31st of August, 1889, and continued up to December, 1890, while the mortgage to the Mortgage Trust Company was not executed until October, 1889, it is conceded by the counsel for the latter company that if the plaintiff had complied in all respects with the pro-

visions of the act of 1888, and had commenced his action to
enforce his lien within ninety days from the time when he
filed his claim for a lien, (December 23, 1890,) his action could
have been maintained and his lien would have had priority.
Inasmuch, however, as he failed to commence his action.
within the time mentioned, it is insisted that the lien had
then expired by the express provisions of the act of 1888,
§ 3814. The plaintiff makes answer to this objection by
citing § 21 of the act of the 12th of March, 1890, which reads
as follows:

"SEC. 21. No lien claimed by virtue of this act shall hold
the property longer than one year after filing the statement
firstly described in section 10, unless an action be commenced
within that time to enforce the same."

This action was commenced within one year after filing the
statement of the plaintiff's claim, and he therefore insists that
it was commenced in time, and that his lien should have prior-
ity. In that contention he is met by the claim of the Mort-
gage Company that the section referred to does not affect the
plaintiff's case, as the contract between him and the Bear
Lake Company was entered into and a large amount of the
work was done under it prior to March, 1890, and while the
act of 1888 was in force, and that by the express terms of
the proviso in § 32 of the act of 1890 the repeal of the act
of 1888 did not affect any right or remedy, nor abate any
suit or proceeding existing, instituted or pending under the
laws thereby repealed.

The terms of the act of 1890 are thus cited as a limitation
of the plaintiff to the provisions of the act of 1888. If plain-
tiff be thus confined he cannot maintain this action, as he did
not commence it until some time after the expiration of the
ninety days from the date of filing his claim.

Upon comparing the two acts of 1888 and 1890 together, it
is seen that they both legislate upon the same subject, and in
many cases the provisions of the two statutes are similar and
almost identical. Although there is a formal repeal of the
old by the new statute, still there never has been a moment of
time since the passage of the act of 1888 when these similar

provisions have not been in force. Notwithstanding, therefore, this formal repeal, it is, as we think, entirely correct to say that the new act should be construed as a continuation of the old with the modification contained in the new act. This is the same principle that is recognized and 'asserted in *Steamship Co.* v. *Joliffe*, 2 Wall. 450, 459. In that case there was a repeal in terms of the former statute, and yet it was held that it was not the intention of the legislature to thereby impair the right to fees which had arisen under the act which was repealed. As the provisions of the new act took effect simultaneously with the repeal of the old one, the court held that the new one might more properly be said to be substituted in the place of the old one, and to continue in force, with modifications, the provisions of the old act, instead of abrogating or annulling them and reënacting the same as a new and original act.

It is true that the law in the *Joliffe* case did not contain any saving of or provision for the rights and remedies of the pilot, but the foundation of the reasoning by which the court concluded that the new should be treated as a continuation of the old statute, with modifications, did not rest alone upon this omission. It was chiefly based upon the facts above stated: the similarity of the subjects-matter of the two statutes, and that the effect was a continuation of the old statute as modified by the new, notwithstanding the use of language which formally repealed the old statute.

The omission to provide for the rights of the pilot does not, therefore, detract from the authority of the case for the purpose for which it is here cited.

The two acts in question here are of a similar nature, relating to the same general subject-matter, and making provisions for the creation and enforcement of mechanic's liens. The new act of 1890, although in terms repealing the earlier act, is yet in truth, and for the reasons already given, a continuation of that act with the modifications as provided in the new one. One of those modifications is the extension of the time in which to commence the action to foreclose the lien after the filing of the statement which claims it. Where at the time of

the passage of the new act the proposed lienor has only entered upon the execution of his contract and has not yet completed the work under it, we think that at least as to him the provision enlarging the time in which to commence the action to foreclose the lien is applicable, and there is no retroactive effect thereby given to that provision of the new act.

It may be asked what effect is given under this construction to the language of the proviso contained in § 32 of the act of 1890, already quoted. The answer is that the mere enlargement of the time in which to commence the action, at least in a case where the time had not yet arrived in which to file any statement of the plaintiff's claim for a lien, does not affect any right or remedy provided for in the old act. The right, as that term is used in the statute, consisted of the right of sale of the property in order, if necessary, to obtain payment of the money due the contractor. The remedy consisted of the taking of certain proceedings by which this sale was to be accomplished. Prior to the arrival of the time when one of these steps was to be taken an alteration of the statute by which the time to take that step might be enlarged was not an alteration of the right or of the remedy, as those terms are used in the statute, nor did it in any way affect either; it was simply an alteration of the mere procedure in the course of an employment of a remedy, the remedy itself remaining untouched or unaffected by such alteration. In this case such an enlargement of time to commence an action was given before the time had arrived in which the action could have been commenced under the old statute. The new statute was prospective in its operation, even as applied to this case. Of course, if the new act had curtailed the time in which to bring the action, after the time had commenced to run under the old statute, totally different considerations would spring up, and what was a mere alteration of procedure, having really nothing to do with a remedy in the one case, might, in the other, most seriously affect it, and hence come within the proviso in question. Under the facts of this case the right or remedy of the plaintiff was not touched, or, in the language of the proviso, was not "affected" by the enlargement of the time in

which to commence the action, and therefore the proviso did not take the plaintiff's case out of the application of the section in the new act providing such enlarged time.

Under the construction given by us to the act of 1890, as a continuation of that of 1888, with modifications, the question as to which act the lien is claimed under is not specially material. In effect, it is one act, and those labors, etc., which were performed before the passage of the act of 1890 are added to those performed thereafter. The lien is really claimed by virtue of the fact that at the time when the contract was entered into the statute of Utah provided such a right or remedy, and although the action to foreclose the lien was commenced under the provisions of the act of 1890, yet the right itself commenced under the old act. That right is not affected by any provision of the new act, and although it is claimed that the right and the remedy must go together under the old act, as they are preserved by the same language, yet, for the reasons already given, the time in which to commence the action is no part of the remedy as that word is used in the proviso, and an extension of that time may be provided for in the new act without in any way affecting the right or remedy of the lienor where the facts are the same as in this case.

It may be assumed that where a statute creates a right not known to the common law, and provides a remedy for the enforcement of such right, and limits the time within which the remedy must be pursued, the remedy in such case forms a part of the right, and must be pursued within the time prescribed, or else the right and remedy are both lost; but it does not, therefore, follow that the plaintiff's right to a lien and to maintain this action must be based solely upon the act of 1888.

We must bear in mind the position of the plaintiff when the act of 1890 was passed. He had not then completed his contract and could not therefore file any statement of claim, nor could he commence any action. The particular time in which he would be allowed to commence his action (provided a sufficient time in fact were given) was, under such circumstances, mere matter of procedure as distinguished from remedy. The

remedy would not thereby be altered, because the remedy consisted ·in filing the statement and· in commencing the action.   The time in which to do either would be matter of procedure only.   Hence, when the act of 1890 was passed, which enlarged the time in ·which to commence the action already provided for, such· enlargement did not affect any right or remedy of the plaintiff.   It did not affect either, because the provision applied only to procedure and not to right or remedy, and therefore the plaintiff could avail himself of the time given him by the act of 1890 in which to commence his action as one of the steps in procedure by which the remedy for a violation of the contract by the enforcement of foreclosure of the lien would be accomplished.

We conclude that the lien of the plaintiff was valid and superior to the mortgage of the Mortgage Trust Company.

Second.   We are of the opinion also that the claim of Corey Brothers & Company for a lien superior to that of the Mortgage Trust Company was properly allowed.   That company claims a superiority of lien because of the clause in its mortgage by which the Bear Lake Company mortgaged to it, in addition to the property then owned by the Lake Company, all its after-acquired property.

A clause in a mortgage which subjects subsequently acquired property to the lien of the mortgage is a valid clause.   *Toledo, Delphos &c. Railroad* v. *Hamilton,* 134 U. S. 296; *Central Trust Co.* v. *Kneeland,* 138 U. S. 414; *Galveston Railroad* v. *Cowdrey,* 11 Wall. 459, 481.

Such a mortgage, as against the mortgagor and subsequent incumbrancers, attaches itself to the after-acquired property as fast as it comes into existence, or as fast as the canal or railroad is built, and the lien of· the mortgagee is held to be superior to that of the constructor.   The lien of the mortgage extends also to an equitable as well as to a legal title to the property subsequently acquired.   134 and 138 U. S., *supra.*

The company·claims that under the principles decided in these cases the lien of its mortgage is superior to the claim of Corey Brothers & Company.

On the contrary, the latter claim to bring their case within

the rule recognized in this court, that even under the after-acquired property clause in a mortgage, if property be burdened with an incumbrance or lien at the very time of coming into the possession or ownership of the mortgagor, such incumbrance remains prior and superior to the lien of the mortgage, although it was actually subsequent thereto in point of time. *United States* v. *New Orleans Railroad*, 12 Wall. 362; *Fosdick* v. *Schall*, 99 U. S. 235, 251.

Some further facts are material to this inquiry, and have been found by the court below. The work done by Corey Brothers & Company is set forth in findings 19 and 23 as made by the trial court. It consisted of work and labor and the furnishing of materials in the construction of the canal from May 1 to December 5, 1890. The canal was constructed on land over which the company had what is termed in the finding the right of way. The land is described in the nineteenth finding, and the manner in which the right of way was acquired is set forth in finding 29, which reads as follows:

"The right of way upon which the canal was constructed, which right of way is described in the finding 19, consisted largely of public land, and was obtained by the defendant, the Bear Lake and River Water Works and Irrigation Company, under and by virtue of the act of Congress of 1866, being section —, Revised Statutes of the United States. A large portion of said right of way was obtained under contract with one Kerr, by which Kerr agreed, upon the construction of said canal through his land, to give said right of way. The other portions of said canals were purchased by the Bear Lake Company at various times from individual proprietors after May 1, 1890."

The section of the Revised Statutes above referred to is section 2339, and it is taken from the ninth section of the act of Congress, c. 262, approved July 26, 1866, 14 Stat. 253, which reads as follows:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes have vested and accrued and the same are recognized and acknowledged by the local customs, laws and the deci-

sions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed: *Provided, however*, That whenever after the passage of this act any person or persons shall, in the construction of any ditch or canal, injure or damage the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage."

Congress subsequently passed another act, approved July 9, 1870, c. 235, entitled "An act to amend an act granting the right of way to ditch and canal owners over the public lands and for other purposes." 16 Stat. 217, 218.

Section 17 of that act is section 2340 of the Revised Statutes, and part of the section reads as follows:

"Sec. 17. None of the rights conferred by sections five, eight and nine of the act of which this is amendatory shall be abrogated by this act, and the same are hereby extended to all public lands affected by this act; and all patents granted or preëmption or homesteads allowed shall be subject to any vested and accrued water rights or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the ninth section of the act of which this act is amendatory."

The trial court made one other finding of fact, (the thirty-third,) by which it was found that the work done by Garland and by Corey Brothers & Company was done for the Bear Lake Company, which company, with the consent of the owners of the legal title, entered into possession of the land through which the canal ditches were dug, and then after so entering into possession the company consented to and permitted the plaintiff Garland and also Corey Brothers & Company to do the work under their contracts with the company in digging and excavating the canal.

The counsel for the Mortgage Company excepted to the twenty-ninth finding of the court, on the grounds, 1st, that there was no evidence upon which to base the finding; 2d, the evidence did not support the finding; 3d, there was no plead-

ing upon which to base the same. This exception as to the lack of evidence to support the findings we cannot consider, and we think that the objection as to the pleading is not well taken.

Upon appeal from the Supreme Court of a Territory this court is precluded under the statute from reviewing any question of fact, and the finding of the court below is conclusive upon this court as to all such questions. The jurisdiction of this court on such an appeal, apart from exceptions duly taken to rulings on the admission or rejection of evidence, is limited to determining whether the findings of fact support the judgment. *Stringfellow* v. *Cain*, 99 U. S. 610; *Neslin* v. *Wells*, 104 U. S. 428; *Eilers* v. *Boatman*, 111 U. S. 356; *Idaho and Oregon Land Co.* v. *Bradbury*, 132 U. S. 509; *Mammoth Mining Co.* v. *Salt Lake Machine Co.*, 151 U. S. 447, 450.

The findings of the trial court are approved and adopted by the Supreme Court of the Territory by a general judgment of affirmance. *Neslin* v. *Wells, supra.*

We must, therefore, in the examination of the question now under consideration be confined to the facts as found by the trial court, approved as they have been by the general affirmance of the judgment by the Supreme Court of the Territory.

So far as the public land is concerned, over or through which these ditches for the canal were dug, the statutes above cited create no title, legal or equitable, in the individual or company that simply takes possession of such land. The government enacts that any one may go upon its public lands for the purpose of procuring water, digging ditches for canals, etc., and when rights have become vested and accrued which are recognized and acknowledged by the local customs, laws and decisions of courts, such rights are acknowledged and confirmed. Under this statute no right or title to the land, or to a right of way over or through it, or to the use of water from a well thereafter to be dug, vests, as against the government, in the party entering upon possession from the mere fact of such possession unaccompanied by the performance of any labor thereon.

Undoubtedly rights as against third persons are acquired

by priority of possession, and the government will and does recognize such rights as between those parties. This is the principle running through the cases cited by the counsel for appellants. In *Sullivan* v. *Northern Spy Mining Co.*, 11 Utah, 438, which is one of those cases, the priority of possession of the person who entered upon the public land and dug the well was recognized as thereby making a superior title to the use of the water from the well over that acquired by a person who was the subsequent purchaser of the land from the government. In that case the well had been dug and the condition fulfilled. If no well had ever been dug, and a reasonable time for digging it had passed, the mere priority of possession would have given no superior title to the land over that acquired by the grantee from the government. It is the doing of the work, the completion of the well, or the digging of the ditch, within a reasonable time from the taking of possession, that gives the right to use the water in the well or the right of way for the ditches of the canal upon or through the public land. Until the completion of this work, or, in other words, until the performance of the condition upon which the right to forever maintain possession is based, the person taking possession has no title, legal or equitable, as against the government. What, if any, equitable claims a party might have upon the government who did a large amount of work, but finally failed to complete the necessary amount to secure the water or right of way, it is not necessary to determine or discuss. Those equities would not, in any event, amount to an *equitable title* to the right of way or to the use of the water, and so need not be here considered.

The Bear Lake Company, therefore, never had any legal or equitable title to the land over or through which the ditch for the canal was dug, as against the government, until the ditch was completed. As the ditch was completed by the labor of the contractor, and the very title of the mortgagor thereto was itself created by his labor, the lien attached to the property as it was created and came into being, and arose coincident with the ownership of the ditch by the mortgagor, and the property came into the hands of the mortgagor burdened

with this lien, which remains superior to that of the mortgage. The point is that the mortgagor never had any claim or title, of a legal or equitable nature, to the land upon which this work was done during the whole time that the work was going on, and when the title did thereafter vest in the Bear Lake Company by virtue of the work done by Corey Brothers & Company, it became burdened with the lien created by virtue of the work so done upon it. If prior to the doing of the work the Bear Lake Company had simply purchased the land, or entered into any such agreement with the owner thereof as gave it an equitable title to the same, then the property would not have come to the Bear Lake Company burdened with any lien, and the work thereafter done upon it in the shape of digging the ditch, etc., would not have given ground for any priority of lien as against the mortgage of the Trust Company.

The material fact to remember is that the sole title to the land or the right of way, which the Bear Lake Company has, whether legal or equitable, is transferred to that company only by virtue of the work previously done upon the land by the constructors, who thereby fulfil the condition upon the performance of which such transfer or the right of such transfer depended. Under these circumstances it is proper to say that the title to the land was transferred subject to the constructors' lien for the work which made the transfer possible and by means of which it was accomplished. The claim is also urged that, even upon the theory of the appellees, the title to the portion of the land or right of way upon which Garland the plaintiff had worked had passed to the Bear Lake Company, and had come under the lien of the mortgage before any work was done by the Corey Brothers & Company firm, and as to that portion of the work the claim is made that the firm could have no lien prior to the mortgage. The fact is that at the time when the firm commenced work in May, 1890, the plaintiff Garland had not completed his work, and did not complete it until along in December following. The title had not therefore passed to the Bear Lake Company when Corey Brothers & Company commenced their work.

Nor is there any priority given to the mortgage as claimed by the appellants by reason of the provision contained in that portion of § 19 of the act of 1890, which reads as follows:

" All such liens shall relate back to the time of the commencement to do work or to furnish materials and shall have priority over any and every lien or incumbrance subsequently intervening, or which may have been created prior thereto, but which was not then recorded, and of which the lienor under this act had no notice. Nothing herein contained shall be construed as impairing any valid incumbrance upon any such land duly made and recorded before such work was commenced, or the first of such materials were furnished."

The very question in issue is whether the mortgage was a valid incumbrance upon any after-acquired land prior to these liens. Inasmuch as the title to the right of way did not pass until the completion of the work, we hold the mortgage was not a valid incumbrance upon such right of way until that time, and that the title came to the Bear Lake Company burdened with the lien claimed by the lienor which attached to the property at the very moment of and simultaneously with the vesting of such title in the company and in priority to the lien of the mortgage.

This principle is in entire harmony with that laid down in the already cited cases of *Galveston Railroad* v. *Cowdrey*, 11 Wall. and *Toledo, Delphos &c. Railroad* v. *Hamilton*, 134 U. S:, and with the cases therein referred to. In neither of the above-mentioned cases did the title to the property come into the hands of the company burdened with any lien. Most of the property in the first above-cited case came to the company before any work was done, and a small portion only was purchased by it after the work was done, and it was held that the lien of the mortgage upon the property as after acquired was superior to that of the constructor who did the work. His work did not transfer the title or create the condition upon which the vesting of the title could take place in the mortgagor, and consequently there was no basis for the claim that the property came to the mortgagor burdened with the lien.

In the *Toledo case* the dock was built upon property to which the mortgagor had a good equitable title and which was covered by the mortgage, just the same as if the title were a legal one, and it was held that the dock became subject to the lien of the mortgage as prior and superior to any lien of the mechanics for construction. It was urged in that case that at the time the mechanic's lien was claimed to have been created, the legal title to the property sought to be affected was not in the railroad company, but was in one George W. Ballou, and, therefore, the mortgage of the property by the railroad company created no legal lien, and although by the decree of foreclosure the legal title was transferred to the mortgagor, yet it was transferred subject to the burden of the mechanic's lien. The court held that the mortgagor had the equitable title to the property before foreclosure, and that the mortgage given by the mortgagor covered property to which it had an equitable title as well as property to which it had a legal title. In the case at bar the mortgagor never had any title at all, legal or equitable, until after the work had been performed by the constructors, and only then by virtue and through the means of such work.

This case bears great similarity to that of *Botsford* v. *New Haven, Middletown &c. Railroad*, 41 Connecticut, 454, the principle of which case was approved in *Toledo &c. Railroad* v. *Hamilton, supra*. The mortgage executed by the company in the *Connecticut case* covered after-acquired property. After the execution of the mortgage it entered into an agreement with the owner of land by which the owner agreed to thereafter convey the land to the company upon condition that the depot of the company should be established thereon and other things done in connection therewith. The court held that the agreement amounted to a conditional sale, and that no title to the property passed to the railroad company unless and until it performed the conditions. Hence it was held that the lien acquired by the constructor of the depot, who was employed by the railroad company for that purpose, attached to the land, and that when the title subsequently came to the railroad company by reason of the performance

of the conditions by it, the land came burdened with the lien upon it in favor of the constructor of the depot, and such lien was therefore superior to the lien of the mortgage.

It is said that in any event the title which finally vested in the Bear Lake Company by virtue of the completion of the work, as claimed by the respondents, relates back to the time when possession of the land over which the right of way existed was first taken, and that such possession was taken by the Bear Lake Company prior to any work being done by either the plaintiff Garland or by the defendants Corey Brothers & Company, and the title thus became subject to the lien of the mortgage before the work was done by the lienors. This doctrine of relation, by which it is claimed that the lien of the mortgage attached to the right of way prior to the lien of the constructor, is a fiction only. It is indulged in for the purpose of thereby cutting off intervening adverse claims of third parties against the right or title set up and acquired by the first possessor. It will not be indulged in for the purpose of thereby effecting an injustice by subjecting the right of way to the prior lien of a mortgage, when the existence of the title to the right of way in the Bear Lake Company was made possible only after and by the labor of the lienors. In such case the actual fact will be considered and not the fiction.

It is also said that the mortgagee occupies a position superior in equity to that of the Corey firm because the mortgage was executed and on record a long time before the firm did any work upon the ditches, and it must have known, or at any rate notice from the record will be imputed to the firm, that the mortgage lien was in existence. The answer to this position is that under the law as above stated, the firm knew that prior to the completion of the work by it, the Bear Lake Company would have no title and the mortgage would not be a lien upon the property, and that when the work was completed the title would pass to the Bear Lake Company burdened with the lien of the firm, and such lien would be superior to that of the mortgage. To one occupying the position of these lienors, the mortgage was not in existence. Upon the same principle the mortgagee would know that it could acquire no lien on

this property superior to that of the lienors, and that the title to the property created by the lienors would come to the Bear Lake Company burdened with their lien. It is plain that in this light the equity of the lienors is superior to that of the mortgagee, and their lien should, if possible, be preferred.

The general principle upon which the lien of Corey Brothers & Company upon the right of way over the public lands is claimed as being prior to that of the mortgage, also applies to and covers the case of the land procured by the Bear Lake Company from Kerr, and mentioned in the foregoing twenty-ninth finding of fact. It was a conditional gift by Kerr to the company of the right of way, to take effect and be valid upon the construction of the canal through the lands of Kerr. As to the portion of the land which was obtained by purchase by the Bear Lake Company at various times from individual proprietors after May 1, 1890, the finding is too general upon which to predicate error calling for a reversal of the whole judgment. The party alleging error should clearly show it, and where it is of a kind that ought not to carry a reversal of the whole judgment because of it, he should in that case show the amount of the error and the extent to which it affected the judgment. Here the case is barren of any finding as to the extent of the purchase from private individuals and whether the purchases were made prior to the work being done or after the same had been performed. Interpreting the thirtieth finding of the court upon this subject as being one of fact, we should say the purchase was not fully accomplished nor was the title finally transferred until after the work had been done. The thirtieth finding is as follows: "All the right of way of the Bear Lake and River Company, as described in finding 19, was acquired by said Bear Lake and River Water Works and Irrigation Company after the mechanic's lien of the plaintiff William Garland and the mechanic's lien of the defendants Corey Brothers & Company attached to the same." The appellants criticise this finding as a conclusion of law. It is made by the court as one of fact, and it may be there is some matter of fact mixed with a legal conclusion. At any rate, the whole matter is left in some uncertainty as to the

exact facts relating to the purchase of the right of way after May 1, 1890, and as to the extent of such purchases from individuals, and as to the conditions upon which the purchases were made.

They may have been made under such circumstances as to bring them directly within the principle of the case last cited. If so, the lands would be subject to a lien to the same extent as the lands otherwise acquired.

We will not in such case indulge in any presumptions unfavorable to the judgment and for the purpose of reversing it, unless they are natural and probable and such as ought to be drawn from the facts actually found by the court below. We do not find this to be the case here.

As another answer to the claim of Corey Brothers & Company, the appellants assert that if the Bear Lake Company were not the owner of the right of way over or through the public lands or lands of Kerr, or of the other individuals, until after the completion of the work, then of course it was not owner thereof at the time when the contract with Corey Brothers & Company was entered into, and in that case they would be entitled to no lien under the act of March 12, 1890.

The first section of that act provides "that whoever shall do work or furnish materials by contract, express or implied, with the owner of any land, to any amount," shall be entitled to a lien. The same section also provides that for the purposes of the act "any person having an assignable, transferable or conveyable interest or claim in or to any land, building, structure, or other property mentioned in this act, shall be deemed an owner."

We think the Bear Lake Company was such an owner as comes within the meaning of the statute of 1890, providing for a lien. Although without a legal or an equitable title until the work was done, yet the Bear Lake Company, when the work was completed, became such owner, and in the mean time and after the execution of the contract with Corey Brothers & Company and with the plaintiff Garland it occupied such a position with regard to the property as brings it within the equity of the statute for the purpose of the lien for

work done, and we think such lien when the work was completed and the statement of claim filed was superior to the lien of the mortgage.

Our conclusion is that the whole judgment should be

*Affirmed.*