**MILLIKEN et al. v. UNITED STATES.**

**No. J–337.**

Court of Claims.

Feb. 17, 1930.

D. A. Embury, of New York City (Curtis, Mallet-Prevost, Colt & Mosle, of New York City, on the brief), for plaintiffs.

Fred K. Dyar, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (William E. Davis and William T. Sabine, Jr., both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, WILLIAMS, LITTLETON, and GRAHAM, Judges.

GREEN, Judge:

This is a suit to recover $812,165.42 alleged to have been wrongfully collected as additional estate taxes. Plaintiffs filed a claim for refund thereof which was denied by the Commissioner.

382

The facts in the case are not in dispute.

The plaintiffs are executors of the estate of Seth M. Milliken, who died on March 5, 1920. In December, 1916, the testator transferred by way of gift 2,713 shares of capital stock of Minot Mills (Inc.). After the death of the decedent the plaintiffs filed a return for the purposes of the tax upon his estate. In so doing, they failed to include the 2,713 shares of stock above referred to. The commissioner held that this stock had been transferred in contemplation of death, and that the value thereof should have been included as a part of the gross estate. For the purpose of the federal estate tax he fixed the value thereof at the time of the decedent's death in the sum of $3,308,720.54. By reason of this action, an additional tax of $812,165.42 was assessed against the estate of the decedent. The plaintiffs paid this additional tax and their application for refund thereof having been denied, now bring this suit, but do not contend that the stock involved was not transferred in contemplation of death.

The issue in the case is whether the Commissioner correctly included the shares of stock above referred to in the gross estate.

The decedent died in March, 1920, and the Commissioner applied the provisions of the Revenue Act of 1918 in determining the tax against his estate, the 1916 act being then repealed. The transfer was by way of gift, and section 402 of the Revenue Act of 1918 (40 Stat. 1097), directs that the gross estate of the decedent shall be ascertained by including (among other things) the value at his death of all property:

"To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth."

 This language is so plain and definite that it is clear that this section applies to the transfer under consideration in this case, although it was made prior to the passage of the 1918 act. Plaintiffs do not question this construction of the statute, but contend that when applied to gifts made prior to the time when the Revenue Act of 1918 went into force, the statute is unconstitutional. This constitutes the question to be determined in the case.

Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 714, 71 L. Ed. 1184, 52 A. L. R. 1081, is cited as supporting the contention of the plaintiffs. In that case it appeared that the decedent and her husband had, in July, 1907, transferred certain property without consideration to trustees who agreed to hold it and pay the income to the settlors, then to the survivor, and thereafter to dispose of it in a manner not necessary here to repeat. On April 6, 1917, the settlors assigned to their children their entire interest in the property. In May, 1917, the decedent and her husband conveyed absolutely certain other property to their children, but we are here concerned only with the application of the law made by the Supreme Court to the transfer first above set forth. The death of the decedent occurred in January, 1921. Her executors made a return under the Revenue Act of 1918 (approved February 24, 1919), which did not include the property first transferred. The Commissioner held that under the provisions of section 402(c) of said act (40 Stat. 1097), which are above set forth, the value of all this property at her death must be included in the gross estate.

The Supreme Court found that the transfer was not made in contemplation of death, and held that section 402(c):

" * * * in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation;" and in giving its reasons for holding the statute arbitrary said:

"An excise is prescribed, but the amount of it is made to depend upon past lawful transactions, not testamentary in character and beyond recall. Property of small value transferred before death may have become immensely valuable, and the estate tax, swollen by this, may leave nothing for distribution. Real estate transferred years ago, when of small value, may be worth an enormous sum at the death. If the deceased leaves no estate there can be no tax; if, on the other hand, he leaves ten dollars both that and the real estate become liable. Different estates must bear disproportionate burdens determined by what the deceased did one or twenty years before he died. See Frew v. Bowers, Collector (C. C. A.) 12 F.(2d) 625."

One fact which is recited above is not found in the case at bar. In the Coolidge Case, supra, the transactions are said to be

"not testamentary in character," by which we understand the court to mean that they were not made in contemplation of death as a part of a plan of distributing the estate of the grantor by conveyance instead of by will. In fact the court in another part of the opinion, states expressly that the transfers were not made in contemplation of death. It is true that the court said in this connection that "undoubtedly, Congress may require that property subsequently transferred in contemplation of death be treated as part of the estate for purposes of taxation." Counsel for plaintiffs argue that it is a fair inference from this language that conveyances made prior to the taxing statute under such circumstances would not be subject to taxation, but we think that what the court intended to have understood was that there was no doubt about such transfers being subject to the tax when made after the enactment of the statute, but as to those made prior thereto it was an open question when they were made in contemplation of death.

As the transfer under consideration in the case at bar was made in contemplation of death, it becomes necessary to determine this question.

If we consider only cases where the statute is not retroactive, we find in the language hereinabove quoted from the Coolidge Case that "undoubtedly, Congress may require that property subsequently transferred in contemplation of death be treated as part of the estate for purposes of taxation." If this be true, it is quite clear that such a statute is not arbitrary and capricious and cannot be held unconstitutional on that ground, although on first consideration it might appear that some of the language used in the Coolidge Case, and in other cases, might apply thereto as a reason for holding it invalid. But when we apply the statute to transfers made in contemplation of death, the whole aspect of the case is changed, and the reasons which the court gave for holding the conveyances in the Coolidge Case not subject to tax do not apply in the case at bar.

In the instant case, the maker of the transfer, as in practically all cases where a conveyance is made in contemplation of death, was using the conveyance to dispose of or distribute his property instead of a will. His purpose was to make this disposition before death intervened to terminate his control thereof. In its effect it differed but little from disposition by will. If another owner of property disposed of all of his property by will, the law required from his

estate a tax based on the value thereof. What reason can be given why the estate of the man who transfers a part of his property in contemplation of death should not pay the same tax as the one who transfers it by will? None, we think, but on the contrary it appears that a provision for taxing property so conveyed in contemplation of death as part of the estate is reasonable and just, and makes for equality between taxpayers rather than inequality, which would otherwise exist. If these conclusions are correctly drawn, it is clear that such a tax is not arbitrary or capricious.

Another forcible and distinct reason for holding such a tax valid is, as stated in the Coolidge Case, that it is necessary to prevent evasion. It is perfectly evident that if the owner of an estate, after he had reason to believe that death was nigh, could, in contemplation thereof, distribute his property by gift instead of by will, the means of avoiding the estate tax would be so apparent and easy, avoidance would become the rule and the payment of the tax the exception. Moreover, in such event, those who were interested in estates conveyed by will could justly complain of the unfair and unjust situation in which they were placed, as compared to those who were purposely avoiding the estate tax. It is well settled that when the general purpose of a legislative act is within the admitted power of the government that the legislative body, as said in Purity Extract Co. v. Lynch, 226 U. S. 192, 201, 33 S. Ct. 44, 46, 57 L. Ed. 184, "may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective"; and further in the same case: "It does not follow that because a transaction, separately considered, is innocuous, it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government." This is especially true where the purpose of the act is in part to prevent evasion, and while so far only transactions occurring after the passage of the act have been discussed, it ought also to be said in this connection that the provision in the statute which made it apply to prior transactions was undoubtedly intended to prevent evasion by making conveyances before the act could go into force. Such provisions have been held valid in tariff acts.

It may be thought, at first, that it is not necessary to elaborate these reasons for holding that the tax on gifts made in contempla-

tion of death is not arbitrary when the Supreme Court has already held that the tax is constitutional when applied to transactions prior to the enactment of the law which imposed it, but these matters are here discussed because they show that the grounds for holding such a tax not to be arbitrary are exactly the same whether the statute is applied to a transfer made after its enactment or before it went into effect, and vice versa no reason can be given for holding the statute to be arbitrary when applied to transactions that took place before its enactment that would not apply equally well to those which occurred after it went into force.

It is urged, on behalf of plaintiffs, that the retroactive features of the act violate the due process clause of the fifth amendment, and that the act further violates the due process clause of the same amendment by the manner in which the gross estate is computed; also that the act, in so far as it applies to property not owned by the decedent at the time of his death, but transferred by way of gift prior thereto, imposes a direct tax which is void for want of apportionment. These statements are general, and the matters which form the principal basis for the attack on the act may be more specifically stated as follows:

First, that the value of property which the decedent has ceased to own—in other words, the property of another—is used to measure the amount of the tax.

Second, that the tax as imposed by the act is not a tax on the transfer of the property of the decedent but a tax on property itself not owned by him at the time of his death.

Third, that the decedent, when he parted with the title to this property, could not anticipate that the tax now sought to be levied would be imposed.

It is perfectly clear that the first two of these matters might be urged with as much force in a case where the act, after its enactment, was applied to a transfer in contemplation of death as they could to a transfer made prior thereto. In both cases the value of property which the decedent had ceased to own is used to measure the tax; in both cases the matters stated in the second objection, if applicable at all, would apply equally. When we examine the third objection closely we find that it can be made against all or nearly all acts which have provided for the retroactive application of taxes, and if held to be sufficient by itself and alone to render the act in question invalid, the same rule applied would make all retroactive taxing statutes unconstitutional. The answer then to the first two of these objections is that the Supreme Court has held that these matters will not invalidate a tax upon a transfer made in contemplation of death. Possibly the third objection in view of what has been stated needs no further answer. It may be contended, however, that some of the language used by the majority opinions in the cases of Blodgett v. Holden, 275 U. S. 142, 48 S. Ct. 105, 72 L. Ed. 206, and Untermyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 72 L. Ed. 645, tends to support the claim that no retroactive estate tax is valid, but these statements are general and must be held applicable only to the particular facts in the cases as to which the opinions were rendered. Until the Supreme Court should specifically so state, we cannot believe that it intended by anything it has said in these two cases last cited to overrule the general principle that a law of Congress imposing a tax may be retroactive in its operation, which has prevailed so long as to be considered settled doctrine. We think it is not without significance that in each case the court made it clear that it was not ruling on a case where the transfer was made in contemplation of death, and that the court has in three cases, where the validity of retroactive estate and gift taxes was involved, emphasized the fact that in the case under consideration the transfer in question was not made in contemplation of death. By reason of this feature of the case at bar we conclude that the tax in question is not unconstitutional.

Counsel for defendant contends that the tax in fact was not retroactive but was merely a continuation with a changed rate of the statute that had previously been in force, but the conclusions we have heretofore reached make it unnecessary to consider this proposition.

It follows that plaintiffs' petition must be dismissed, and it is so ordered.

BOOTH, Chief Justice, and WILLIAMS and LITTLETON, Judges, concur.

GRAHAM, Judge (concurring in the result).

The petitioners are executors of the estate of Seth M. Milliken, deceased. The taxing act of 1916 was passed on the 8th day of September, 1916. In December of 1916 the said Milliken made a gift in contemplation of death and transferred 2,713 shares of the stock of Minot Mills, Inc., to his three

children. Between the date of the gift and the date of his death the act of 1918 was passed, becoming effective in February, 1919. The testator died on March 5, 1920. The act of 1916 and the act of 1918 each contained provisions levying a tax on gifts made during life but "in contemplation of death." The pertinent sections[1] of the acts are in footnote.

It will be seen from an examination of these sections in the two statutes that they are verbatim except the language (in the act of 1918) "at any time" and "whether such transfer or trust is made or created before or after the passage of this Act.". Under the facts here it is to be noted—

(1) That the gift in this case was not made before the passage of the act of 1916 but after, and would clearly have been taxable under that act had the 1918 act not been passed or if the testator had died the day before the passage of the act of 1918.

(2) That as this gift was made "in contemplation of death," it would not make any

difference when the testator died. It was liable for tax when he did die, unless Congress by some act relieved the property of liability to taxation, and the inchoate liability having already attached, it is a reasonable construction of the retroactive clause as to this case, and similar ones, that Congress at least intended the provision to reach such cases and had them in mind, therefore intending by the act of 1918 to continue into the act of 1918 an inchoate liability incurred under the act of 1916. If this be true, it is reasonable to hold that it did not intend to repeal the act of 1916 as to such cases.

(3) But we are not left with only this view to stand upon. Congress in the act of 1918, after repealing certain titles of the acts of 1916 and 1917, among them Title 2 of the act of 1916, which included the sections quoted in footnote, used this language (40 Stat. 1150 § 1400(b):

"Such parts of Acts [meaning acts repealed] shall remain in force for the assessment and collection of all taxes which have accrued thereunder, * * * *Provided*, That, except as otherwise provided in this Act, no taxes shall be collected under Title I of the Revenue Act of 1916 [which contains the sections involved here] as amended by the Revenue Act of 1917, or Title I or II of the Revenue Act of 1917, in respect to any period after December 31, 1917. [Note the language, "except as otherwise provided in this act."] Provided further, That the assessment and collection of all estate taxes * * * which have accrued under Title II of the Revenue Act of 1916 * * * shall be according to the provisions of Title IV of this Act [which contains the sections involved here]. In the case of any tax imposed by any part of an Act herein repealed, if there is a tax imposed by this Act in lieu thereof, the provision imposing such tax shall remain in force until the corresponding tax under this Act takes effect under the provisions of this Act."

The tax here "imposed was by" a part of the act of 1916 and the tax imposed by the provision of that act "was imposed by this Act [1918] in lieu thereof," and, therefore, "the provision imposing such tax [1916] shall remain in force until the corresponding tax under this [1918] Act takes effect" under its provisions.

Whatever this provision may mean generally, it covers this case and seems to show an intention to carry forward the provision of the act of 1916 into the act of 1918, and

---

[1] "Sec. 202. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated: * * *

"(b) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title." 39 Stat. 777–778.

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has *at any time* created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death *(whether such transfer or trust is made or created before or after the passage of this act)*, except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title." 40 Stat. 1097. (Italics mine.)

make it effective under the provisions of that act by re-enacting it, and that as to such re-enactments the provision as to repeal would not be effective. This view of the matter is strengthened by the additional language in section 402(c) of the act of 1918, viz, "whether such transfer or trust is made or created before or after the passage of this Act."

According to the construction presented by the petitioners, we would have this situation, namely, that had the donor died the day before the act of 1918 became effective there would have been no question of liability, but if he had died the day after the passage of that act there would be no liability, because the act of 1916 had been repealed and the liability released thereby. Rather than hold that Congress contemplated such an effect by the repealing clause of the act of 1918, it is more reasonable to hold that Congress by re-enacting the very words of sections 201 and 202(b) of the act of 1916 into the act of 1918 intended the 1918 act, as to these sections, to be a continuation of the 1916 act, and that, as to these sections of the act of 1916 which were thus re-enacted, it intended that the repeal should not apply. This construction imposes no hardship upon them.

Under the facts of this case there is nothing capricious or arbitrary in the retroactive clause as thus construed. Where the subsequent act from its provisions gives reasonable grounds for holding that it was a continuation of the previous act, even though there has been a formal repeal, it will be held to be a continuation of the old act with modification contained in the new. See the following cases: Campbell v. California, 200 U. S. 87, 26 S. Ct. 182, 50 L. Ed. 382; Steamship Co. v. Joliffe, 2 Wall. 450, 458, 459, 17 L. Ed. 805; Gulf, Colo. & Santa Fe Railway Co. v. Dennis, 224 U. S. 503, 507, 32 S. Ct. 542, 543, 56 L. Ed. 860; Wright v. Oakley, 5 Metc. (Mass.) 406; and Bear Lake & River Water Works & Irrigation Co. v. Garland, 164 U. S. 1, 11, 12, 17 S. Ct. 7, 9, 41 L. Ed. 327.

In the case of Campbell v. California, 200 U. S. 87, 26 S. Ct. 182, 50 L. Ed. 382, in which the court cited with approval the Joliffe and Wright Cases, the court spoke of the general and continuing nature of the legislation contained in the statute. The legislation involved in the Campbell Case was an inheritance tax law.

The facts in the case of Steamship Co. v. Joliffe, supra, which is a leading case, were, that a pilot under a contract authorized by statute earned certain pilot fees. The act authorizing the fees was repealed. The court in holding that the second act was a continuation of the first in spite of the repealing clause, said:

" * * * The new act re-enacts substantially all the provisions of the original act, relating to pilots and pilot regulations for the harbor of San Francisco. It subjects the pilots to similar examinations; it requires like qualifications; it prescribes nearly the same fees for similar services; and it allows half-pilotage fees under the same circumstances as provided in the original act. * * * The new act took effect simultaneously with the repeal of the first act; its provisions may, therefore, more properly be said to be substituted in the place of, and to continue in force with modifications, the provisions of the original act, rather than to have abrogated and annulled them."

And the court in its opinion quotes the following language of Chief Justice Shaw in Wright v. Oakley, 5 Metc. (Mass.) 406:

" * * * but these repeals went into operation simultaneously with the revised statutes, which were substituted for them, and were intended to replace them, with such modifications as were intended to be made by that revision. There was no moment in which the repealing act stood in force without being replaced by the corresponding provisions of the revised statutes. In practical operation and effect, therefore, they are rather to be considered as a continuance and modification of old laws than as an abrogation of those old and the re-enactment of new ones."

In Gulf, Colo. & Santa Fe Railway Co. Case, supra, where there was involved a statute containing a simultaneous repeal and re-enactment of a prior statute, the court said:

"During its pendency in this court the legislature of the state passed a new statute, embodying the provisions of the prior law, with some modifications, and also in terms repealing it. The point was then made that the repealing clause terminated the right to recover, and therefore that the action could no longer be maintained. And while the question whether the simultaneous re-enactment and repeal of the prior law interrupted its continuity was a question of local law, it was fully considered, and the conclusion was reached that in practical operation and effect there was no repeal, but only a continuance of the prior law. * * * * "

In the Bear Lake & River Waterworks & Irrigation Co. Case, supra, it is said:

"* * * Although there is a formal repeal of the old by the new statute, still there never has been a moment of time since the passage of the act of 1888 when these similar provisions have not been in force. Notwithstanding, therefore, this formal repeal, it is, as we think, entirely correct to say that the new act should be construed as a continuation of the old with the modification contained in the new act."

The court cited with approval Steamship Co. v. Joliffe, supra.

In all of these cases it was held that the mere repeal does not make the question of the application of a statute a moot question, and that if the subsequent act is of the "general and continuing nature of the legislation contained in the previous act," they should be treated as one act.

I am the more impelled to this construction of the act as it eliminates the question of constitutionality of the act of 1918. In passing upon the constitutionality of a law it has been the undeviating rule of the Supreme Court to so construe the act involved as to uphold, if possible, its constitutionality. It is a rule of which the courts must be carefully mindful in the performance of this "gravest and most delicate duty." It is well settled that among other matters to be taken into consideration, as to two interpretations of a statute, the one destroying and the other saving the constitutionality of the act, it is the court's duty to adopt the latter. The right of the federal courts to declare an act of Congress unconstitutional has been upheld and accepted, though there have been charges of judicial usurpation at different periods in the history of the country, even within the last decade, but the annulment of an act on constitutional grounds must be avoided if possible, and the courts have even gone the length of giving very strained constructions to statutes in order to accomplish this purpose. See United States v. Jin Fuey Moy, 241 U. S. 394, 401, 402, 36 S. Ct. 658, 60 L. Ed. 1061; and United States ex rel. Atty. Gen. v. Delaware & Hudson Company, 213

U. S. 366, 407, 408, 29 S. Ct. 527, 53 L. Ed. 836.

There is still another view of this case. As stated, this is a case of a gift "in contemplation of death." In this it differs from the cases of Nichols v. Coolidge, 274 U. S. 531, 541, 47 S. Ct. 710, 713, 71 L. Ed. 1184, 52 A. L. R. 1081, in which the court said:

"* * * The right to become beneficially entitled is not the occasion for it. There is no claim that the transfers were made in contemplation of death or with purpose to evade taxation."

And in Blodgett v. Holden, 275 U. S. 142, 146, 48 S. Ct. 105, 106, 72 L. Ed. 206, the court said: "* * * transferred by gifts inter vivos, and not in contemplation of death. * * *"

In Untermyer v. Anderson, 276 U. S. 440, 445, 48 S. Ct. 353, 354, 72 L. Ed. 645, it was stated:

"* * * And, further, that so far as applicable to bona fide gifts not made in anticipation of death and fully consummated prior to June 2, 1924, those provisions are arbitrary and invalid under the due process clause of the Fifth Amendment."

It thus seems that in these three cases, in holding a taxing act for the purpose of raising revenue unconstitutional under the particular facts of those cases, the case of gifts made "in contemplation of death" was expressly reserved, and the language of the court seems to indicate that in those cases, if the gifts had been made "in contemplation of death," the decision might have been different.

As it has been the policy of this court not to adjudge an act of Congress unconstitutional, and of the Supreme Court, as heretofore stated, to construe an act so as to uphold its constitutionality if possible, and in view of the interpretation which I give the act of 1918 as a continuation of the act of 1916, as far as the sections of the act in dispute here are concerned, and the evident exception from the three decisions supra, of gifts made in contemplation of death, I concur in the result reached by the court.