**UNION PACIFIC RAILROAD COMPANY**

v.

**The UNITED STATES.**

**No. 506–53.**

United States Court of Claims.

Jan. 16, 1957.

Lawrence Cake, Washington, D. C., for the plaintiff. Raymond A. Negus, Washington, D. C., was on the brief.

Pauline B. Heller, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Paris T. Houston, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

In 1943 and 1944 the plaintiff railroad carried goods for the Commodity Credit Corporation, which was an agency of the United States. The railroad submitted bills for the carriage and the CCC paid the bills as submitted. The bills were excessive, in that they did not give the CCC the benefit of land-grant rates to which it was entitled.

In 1953 the Government notified the plaintiff that an audit showed that the plaintiff had been overpaid, and requested the plaintiff to refund the excess collected. The plaintiff did so, and now sues to recover the amount so refunded, on the ground that the Government's right to a return of the excess charges collected from it had been barred by a statute of limitations at the time it requested and received the return of the excess from the plaintiff.

Section 322 of the Transportation Act of 1940, 54 Stat. 955, 49 U.S.C.A. § 66, provides that the Government shall pay freight bills when presented, without waiting to audit them, but that it shall have the right, when it does later make an audit, to deduct any overpayment disclosed by the audit from any amount subsequently found to be due the rail-

road. If this were the only statute involved, it would be plain that the Government had the right in 1953 to pay itself out of money which it otherwise owed the plaintiff for transportation services, for the excess charges which it had paid the plaintiff in 1943 and 1944, and that the plaintiff, having refunded the money instead of causing the Government to pay itself out of other money which it owed the plaintiff, could not recover what it refunded.

The plaintiff urges, however, that there is another pertinent statute which requires a different conclusion in cases where the Government agency involved is the Commodity Credit Corporation. The CCC was originally a Delaware corporation, though an agency of the United States. By the act of June 29, 1948, 62 Stat. 1070, as amended by 63 Stat. 154, 15 U.S.C.A. § 714, herein called the Charter Act, a Federal corporation of the same name was created, which was to have the assets and rights and be subject to the liabilities of the former Delaware corporation. Section 714b(c) of Title 15 U.S.C.A. provides that the CCC

"May sue and be sued, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property * * * No suit by or against the Corporation shall be allowed unless (1) it shall have been brought within six years after the right accrued on which suit is brought, * * * The defendant in any suit by or against the Corporation may plead, by way of set-off or counterclaim, any cause of action, whether arising out of the same transaction or not, which would otherwise be barred by such limitation if the claim upon which the defendant's cause of action is based had not been barred prior to the date that the plaintiff's cause of action arose: *Provided,* That the defendant shall not be awarded a judgment on any such set-off or counterclaim for any amount in excess of the amount of

the plaintiff's claim established in the suit * * * Any suit by or against the United States as the real party in interest based upon any claim by or against the Corporation shall be subject to the provisions of subsection (c) of this section to the same extent as though such suit were by or against the Corporation, except that (1) any such suit against the United States based upon any claim of the type enumerated in section 1491 of Title 28, may be brought in the United States Court of Claims, * * *."

The plaintiff says that this statute barred the Government from suing the plaintiff to recover the excess charges, and also barred the Government from setting off the excess charges against money otherwise due the plaintiff. That being so, the plaintiff says that since it refunded the excess charges at the Government's request, and because of the Government's threat of making the set-off, it can recover in this suit the amount which it so refunded.

The Government says, for one of its defenses, that regardless of the merits of these contentions of the plaintiff, the plaintiff cannot recover because it made the refund voluntarily, and without even a protest which was specifically directed to this payment. The question whether or under what circumstances a payment voluntarily made of money not legally owing gives rise to a right to recover the payment is an interesting and difficult one, but we do not find it necessary to resolve that question in this case.

We construe the Charter Act of the CCC as not repealing section 322 of the Transportation Act of 1940. The plaintiff does not, of course, urge that the provision of that section requiring the Government to pay freight bills upon presentation, without waiting for an audit, is repealed. That provision is of great benefit to the railroads, enabling them to collect their bills without delay, and have the use of the money during the time taken by the Government for its audit. With that provision of section

322 in effect, the Government would be in a disadvantageous position if it were denied the right of setoff unless it succeeded in making its audit within six years. We are not advised as to the time normally required, or taken, for such audits, but the fact that in the instant case it was not completed until nine years after the bills presented by the railroad had been paid indicates that six years is not the maximum time required or taken.

The Government points to section 4(k) of the Charter Act, 15 U.S.C.A. § 714b (k) which gives to the CCC authority "to make final and conclusive settlement and adjustment of any claims by or against the Corporation." This section, unlike section 4(c) relating to suits, fixes no time limit beyond which such administrative settlements cannot be made. On February 23, 1951, the Attorney General rendered an opinion, 41 Op.Attorney General, No. 15, that the CCC could legally pay claims on which it could no longer be sued because of the time limit for suits set in section 4(c). Shortly thereafter the CCC announced a policy for the settlement, adjustment and payment of claims against it provided they were filed within ten years after accrual.

An individual debtor, who is no longer liable to suit because the statute of limitations has run against the creditor's claim, may, of course, still pay the debt, because it is the honorable thing to do, or to conserve his reputation for fair dealing and keep his credit unimpaired. But, whether he pays or not is a purely personal decision for him to make. Where, however, Congress has set a time limit of six years for suits against the United States as it has in 28 U.S.C. § 2501, but has also provided, 31 U.S.C.A. §§ 71a, 237, that claims against the United States may be filed in the General Accounting Office at any time within ten years, it must have meant that claims time-barred from suit should nevertheless receive the same consideration on their merits by the General Accounting Office as if an adverse decision by that agency might be followed by a suit. Sim-

ilarly, section 4(k) of the CCC Charter Act, as construed by the Attorney General, did not contemplate that the CCC should, at its caprice, pay or refuse to pay claims filed with it which were time-barred from suit by section 4(c). But we think that Congress could hardly have intended by section 4(k) that the CCC should consider on its merits and pay a claim against it, time-barred from suit, and disregard a charge which it had against the claimant, similarly time-barred from suit.

The above discussion seems to us to lead to the conclusion that Congress did not, by section 4(c) mean more than it said, which was that no suit could be brought upon claims more than six years old. We think it did not intend to disturb the normal processes of administrative settlement, particularly the one expressly established by section 322 of the Transportation Act of 1940. There would be no equity whatever in an arrangement whereby a railroad, if it had a claim against the Government of a kind which had not, under the mandate of section 322, been paid upon presentation, and more than six years had elapsed since its accrual, would have a right to have its claim considered on its merits by the General Accounting Office within ten years, but that office would have no right to set off a claim of the CCC, time-barred from suit by section 4(c) of the Charter Act.

The plaintiff cites the decision of the Supreme Court of the United States in United States v. Lindsay, 346 U.S. 568, 74 S.Ct. 287, 98 L.Ed. 300. The question at issue in that case was whether the time limitation on claims of the CCC, set by section 4(c) of the Charter Act in 1948 began to run from the date of that statute, or from the earlier date of the accrual of the claims. The plaintiff points out that the Government, in its petition for *certiorari* in that case urged that if the lower court decision that the limitation period began to run from the earlier date was allowed to stand, some seven or eight million dollars in overcharges by railroads in 1943 and 1944

which the CCC would seek to collect by suit or offset, and many such amounts which had already been collected by offset, would be lost to the Government, since the railroads could plead the statute if sued, and could sue the Government and recover the amount of the offsets if the Government had collected the overcharges by offset. The Supreme Court decided the Lindsay case against the Government. The issue which we have before us was not the issue in that case. The Government's argument in that case as to what might be a collateral consequence of the affirmance of the judgment in that case does not make that decision a decision of our question.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.