**UNITED STATES of America,**
**Appellant,**

v.

**MISSOURI PACIFIC RAILROAD COM-**
**PANY, Appellee.**

**No. 16777.**

United States Court of Appeals
Fifth Circuit.

Jan. 14, 1958.

Rehearing Denied March 12, 1958.

---

* See Ward v. United States, 76 S.Ct. 1063, 1 L.Ed.2d 25.

Malcolm R. Wilkey, U. S. Atty., James E. Ross, Asst. U. S. Atty., Houston, Tex., Alan S. Rosenthal, Melvin Richter, Attys., Dept. of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., Geo. S. Leonard, Acting Asst. Atty. Gen., for appellant.

Carroll R. Graham, Houston, Tex., and Hutcheson, Taliaferro & Hutcheson, Woodul, Arterbury & Wren, Howard S. Hoover, Houston, Tex., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

This suit arises out of the action of the government in deducting, under the authority of Sec. 322 of the Transportation Act of September 18, 1940, 49 U.S.C.A. § 66, from freight bills admittedly due, sums which it claimed as overpayments on other freight bills earlier paid.

Submitted on a stipulation of facts and decided by the district judge in favor of the plaintiff railroad, three questions are presented.

The first question is: Was the railroad, which sued for the admitted freight due it on later shipments, entitled to recover from the government the amounts deducted by it in a later audit on the claim that, while the shipment was first billed to it as weighing 9290 pounds, a correction bill was later sent and it was paid for as weighing over 35,000 pounds? The primary point here, since no proof was offered as to the correct weight, is whether the plaintiff railroad company had the burden of proving that the government's deduction, based upon its assertion that the shipment weighed 9290 instead of the 35,000 pounds it paid for, was wrong, or whether the burden was upon the defendant to prove the correct weight.

The district judge found with the plaintiff that the burden was on the government, and, in addition, without any evidence to support the finding, since the correct weight was not testified to and the only part of the stipulation having any bearing on the question was that two bills of lading, the first stating the weight as 9290 and the second one stating it as over 35,000, were issued by the railroad,

he categorically found that the weight was 35,300 pounds.

The second question is whether, as the plaintiff claims, shipments of Air Force cases shipped from St. Louis to Houston, of nine carloads of a commodity described on each of the bills of lading as "Item No. 1, Case, Shipping. Air Force Organization Equipment (Shipping boxes, wooden, chemically hardened fibre boxes)", were properly charged the rates provided for in Consolidated Freight Classification No. 15 "Baskets (boxes) or hampers chemically hardened fibre", or whether, as the defendant claims, the articles are ratable and were properly charged as within exceptions to the classification in S.W. Lines Tariff 173 Q ICC No. 3584, under the description "Boxes, wooden noibn", "noibn" meaning not othwise indexed by name in the classification.

It was stipulated that each case consisted of four nested containers made of ⅜ inch plywood. The inside and outside of each container was covered with .018 vulcanized fibre glued to the plywood with a water resistant glue. It was further stipulated that if the plaintiff's contention is correct, the plaintiff is due judgment for $2,487.57 on the item in this paragraph, and that if the defendant's contention is correct, the plaintiff is due nothing on this item.

The district judge found with the plaintiff railway company.

The third question is whether, because the withholding action was taken after the running of the period set forth in Section 4 of the Commodity Credit Corporation Charter, Act of June 29, 1948, as amended, 15 U.S.C.A. § 714b(c), the United States was without authority to deduct freight charges paid from funds of the Commodity Credit Corporation on shipments made from Beaumont, Texas, for export for its account. The government contends that the statute did not come into play and was not effective because the deduction was merely an ad-

ministrative act under the lawful exercise of the authority granted in Sec. 322.

The district judge held with plaintiff that the Statute barred the deduction.

■■ As to its first claim, the government is here pointing out that, though the decision of the district judge is supported by United States v. New York, New Haven & Hartford, 1 Cir., 236 F.2d 101, a writ of certiorari has been granted in it, and arguing with what has turned out to be prophetic vision [1] that the decision will be reversed and the position of the United States sustained.

As a matter of original viewpoint, as well as on the authority of United States v. New York, New Haven & Hartford Ry. Co., note 1, supra, we find ourselves in agreement with the government's position.

■■ When it comes to the second question, the tariff to be applied to the shipment of Air Force Organization equipment, we think the rule which should govern such construction is no better stated than in United States v. Missouri, Kansas & Texas Railroad Co., 5 Cir., 194 F.2d 777, at pages 778–779:

"The construction of a printed railroad tariff presents a question of law and does not differ in character from that presented when the construction of any other document is in dispute. The four corners of the instrument must be visualized and all the pertinent provisions considered together, giving effect so far as possible to every word, clause, and sentence therein contained. The construction should be that meaning which the words used might reasonably carry to the shippers to whom they are addressed, and any ambiguity or reasonable doubt as to their meaning must be resolved against the carriers. But claimed ambiguities or doubts as to the meaning of a rate tariff must have a substantial basis in the light of the ordinary

[1]. United States v. New York, New Haven & Hartford Ry. Co., 78 S.Ct. 212.

meaning of the words used and not a mere arguable basis. Hohenberg v. Louisville & N. R. R. Co., 5 Cir., 46 F.2d 952; Christensen v. Northern Pac. Ry. Co., 8 Cir., 184 F.2d 534; Norvell-Wilder Supply Co. v. Beaumont, Sour Lake & Western Railway Co., 274 ICC 547."

Applying that rule to the tariffs in question here, we agree with the position of the government that the district judge wrongly construed them and the wrong rate was applied. In reaching this conclusion, we primarily put it on the ground that the tariffs under construction on their face admit of no other reasonable conclusion. But, if we are wrong in this, we think the same result is required in the application of the principle thus stated in the above quotation: "The construction should be that meaning which the words used might reasonably carry to the shippers to whom they are addressed, and any ambiguity or reasonable doubt as to their meaning must be resolved against the carriers." Other statements and applications of this rule are to be found in Hohenberg v. Louisville & N. R. R. Co., supra, 46 F.2d at page 955, American Ry. Exp. Co. v. Price, 5 Cir., 54 F.2d 67, and Atlantic Coast Line Railway Co. v. Atlantic Bridge Co., 5 Cir., 57 F.2d 654. In the Hohenberg case, 46 F.2d at page 955, the court said:

"Where there is no ambiguity in the language used, a rate may be unjust and yet be enforced as the established one, but in doubtful cases, in the construction of a tariff, as of a law, in order to arrive at the intent of its framers, a court is warranted in considering how the rates claimed would operate as a matter of justice."

while in the Atlantic Coast Line case, the principle was thus stated:

"Tariffs, like statutes, have the force of law; like statutes, they must be expressed in clear and plain terms, so that those dealing with and governed by them may understand them and act advisedly * * * If they are ambiguous, or permit of two meanings, the shipper may construe them in the most favorable way to himself which the terms permit." [57 F.2d 655].

■ Of the third point, that it was error to hold that the recovery of the alleged overpayment made by the Commodity Credit Corporation on appellee's bills was barred by Section 4(c) of the Commodity Credit Corporation Charter Act of 1948, it is sufficient to say that we agree with the position of the United States that the precise question here involved was correctly decided by the Court of Claims adversely to the carrier in Union Pacific R. R. Co. v. United States, 147 F.Supp. 483, and, without laboring the matter further, we hold that upon the considerations and for the reasons stated in that opinion, the finding and conclusion of the district judge was wrong.

The judgment appealed from is, therefore, Reversed and the cause is Remanded with directions (1) to deny appellee recovery of the deductions arising out of its charges for the transportation of the airplane fusilages and Air Force boxes, and (2) to put appellee to its proof on the question of the correctness of its charges for the transportation of the Commodity Credit Corporation foodstuffs. Reversed and Remanded.