**COOPER STEVEDORING OF LOUISI-ANA, INC. and Employers National Insurance Company, Petitioners,**

v.

**James WASHINGTON, and Director, Office of Workers Compensation Programs, United States Department of Labor, Respondents.**

No. 76–2849.

United States Court of Appeals, Fifth Circuit.

July 20, 1977.

Rehearing and Rehearing En Banc Denied Sept. 21, 1977.

Ronald A. Johnson, Patrick E. O'Keefe, George W. Healy, III, New Orleans, La., for petitioners.

Edward H. Booker, New Orleans, La., William J. Kilberg, Sol., Laurie M. Streeter, Associate Sol., Mary A. Sheehan, Joshua T. Gillelan, II, Attys., U. S. Dept. of Labor, Washington, D. C., for respondents.

Before AINSWORTH and MORGAN, Circuit Judges, and LYNNE *, District Judge.

AINSWORTH, Circuit Judge:

This case presents novel questions arising from the recent amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* It grows out of a petition for review of the decision and order of the Benefits Review Board affirming a compensation order of an administrative law judge awarding disability benefits to James Washington, a longshoreman, pursuant to the Act. After a careful review and analysis of this matter, we affirm the Board's decision.

We must determine (1) whether the limitation provisions contained in Section 13(a) of the amended Act [33 U.S.C. § 913(a)] are retroactive,[1] and (2) assuming that they are

---

* Senior District Judge of the Northern District of Alabama, sitting by designation.

1. Prior to the 1972 amendments, 33 U.S.C. § 913(a) read as follows:

retroactive, whether the last sentence of the section, which enlarges the time for filing a claim, applies to accidental injuries. Also at issue are the additional questions of whether the record contains substantial evidence to support the decision of the administrative law judge that the date of Washington's awareness of his injury was June 4, 1973, and whether there was adequate notice that the issue of total and permanent disability would be considered at the hearing.

On August 29, 1972, Washington, while in the course of his employment with Cooper Stevedoring of Louisiana, Inc. [the Employer], was struck on the back, neck and face by a length of steel cable. He was immediately sent by a company superintendent to the office of Doctors Lyons and Paine. Dr. Paine examined Washington and concluded that his injuries were not serious. After stitching the facial cuts, Dr. Paine told the patient he could return to work and suggested rubbing the painful neck area with oil. Two days later Washington returned to the company doctors' office and was seen by Dr. LaRose who informed him that the neck pain was caused by stiffness and bruised tissue. He prescribed pain pills and recommended that Washington continue to rub oil on the affected area. Washington returned to the doctors' office several days later at which time x-rays were taken. Dr. LaRose expressed the opinion that the neck pain was attributable to arthritis and not to the accident. He informed Washington that the company doctors would not treat such a condition and that he should consult with his family doctor. On June 4, 1973, Washington saw a neurosurgeon, Dr. Jackson, who diagnosed the condition as cervical degenerative disc disease, a preexisting condition which was aggravated by the blow which the patient received causing it to become symptomatic. On August 28, 1973, Dr. Jackson performed surgery on Washington consisting of the removal of two degenerative discs and interior cervical fusion at both levels. Washington continues to suffer and Dr. Jackson is of the opinion that further surgical fusion is indicated but he cannot guarantee the results of a second operation.

On February 12, 1974, counsel for Washington filed on his behalf a claim for compensation with the deputy commissioner. A hearing was held before the administrative law judge who issued his decision and order, finding claimant to be totally and permanently disabled as a result of the accident which aggravated the preexistent latent condition of cervical degenerative disc disease or cervical spondylosis. He further found that the manifestation of the "harm

The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the injury, and the right to compensation for death shall be barred unless a claim therefor is filed within one year after the death, except that if payment of compensation has been made without an award on account of such injury or death a claim may be filed within one year after the date of the last payment. Such claim shall be filed with the deputy commissioner in the compensation district in which such injury or such death occurred.

The 1972 amendment preserves the basic limitation provision that "the right to compensation . . . shall be barred unless a claim therefor is filed within one year after the injury" but qualifies in the last sentence thereof the time at which the limitation period shall commence. As amended Section 913(a) now reads:

Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefore is filed within one year after the injury or death. If payment of compensation has been made without an award on account of such injury or death, a claim may be filed within one year after the date of the last payment. Such claim shall be filed with the deputy commissioner in the compensation district in which such injury or death occurred. *The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.* (Emphasis supplied.)

In determining that the claim was timely filed, the administrative law judge referred to amended Section 913(a). In affirming that decision and order the Benefits Review Board inadvertently stated that "The administrative law judge found that the injury, for purposes of filing a claim under *unamended* Section 13(a), took place on June 4, 1973." (Emphasis supplied.)

done by the accident" was the "date of the injury," that Washington "was led to and did believe that his neck problems resulted from arthritis or an arthritic condition not related to or resulting from the accident," and that he "did not discover the true cause and effect of his problems until his initial consultation with Dr. Jackson on June 4, 1973." Accordingly, the administrative law judge concluded that "the date on which the claimant first realized the true harm done by the accident and that his ailments were job-related" was June 4, 1973, which date commenced the running of the one-year limitation period under the Act, and therefore that the claim filed on February 12, 1974 was timely.

Employer does not contest the gravity or nature of Washington's injuries or that they were job-related. Nor does it dispute the well-established principle that aggravation of a preexisting condition is compensable under the Act.[2] Employer contends, however, that the 1972 amendment to Section 913(a) is not applicable in this case as the accident occurred prior to its effective date.

## THE ISSUE OF RETROACTIVITY.

Washington's accident occurred on August 29, 1972. Approximately three months later on November 26, 1972, and well within the one-year limitation period for filing claims under the pre-amended Act, the 1972 amendment to Section 913(a) took effect changing the time for the commencement of the limitation period to the date of employee awareness of the relationship between the injury and the employment. On February 12, 1974, Washington's claim was filed with the deputy commissioner.

Employer contends that the cause of action is barred by limitation because the amendment to Section 913(a) is not retroactive. In support of this position, reliance is placed on decisions which recognize the general rule of law that where a statute creates a cause of action unknown at common law, a period of limitation contained in the statute is regarded as a matter of substance, limiting the right as well as the remedy.[3] The cases cited by Employer, however, involve suits filed by parties after the expiration of any statutory limitation period.[4] None of these cases presents the

---

2. *See, e. g., Southern Stevedoring Co. v. Henderson*, 5 Cir., 1949, 175 F.2d 863; *Fidelity & Casualty Co. of New York v. Manley*, 5 Cir., 1943, 132 F.2d 127; *Wheatley v. Adler*, 1968, 132 U.S.App.D.C. 177, 407 F.2d 307.

3. That this principle, like most general rules of law, is subject to exception is shown in the following language from *Bear Lake & River Waterworks & Irrigation Co. v. Garland*, 164 U.S. 1, 17 S.Ct. 7, 41 L.Ed. 327 (1896), in which the Supreme Court analyzed a state statutory provision enlarging the time in which a suit to foreclose a mechanic's lien could be filed:

It may be assumed that where a statute creates a right not known to the common law, and provides a remedy for the enforcement of such right, and limits the time within which the remedy must be pursued, the remedy in such case forms a part of the right, and must be pursued within the time prescribed, or else the right and remedy are both lost; but it does not therefore follow that the plaintiff's right to a lien and to maintain this action must be based solely upon the act of 1888.

We must bear in mind the position of the plaintiff when the act of 1890 was passed. He had not then completed his contract, and could not therefore file any statement of claim, nor could he commence any action. The particular time in which he would be allowed to commence his action (provided a sufficient time in fact were given) was, under such circumstances, mere matter of procedure, as distinguished from remedy. The remedy would not thereby be altered, because the remedy consisted in filing the statement and in commencing the action. The time in which to do either would be matter of procedure only. Hence, when the act of 1890 was passed, which enlarged the time in which to commence the action already provided for, such enlargement did not affect any right or remedy of the plaintiff. It did not affect either, because the provision applied only to procedure, and not to right or remedy; and therefore the plaintiff could avail himself of the time given him by the act of 1890 in which to commence his action. 164 U.S. at 14, 15, 17 S.Ct. at 10.

4. *See Osbourne v. United States*, 2 Cir., 1947, 164 F.2d 767 [substantive limitations of Jones Act and Suits in Admiralty Act were tolled for period during war in which seaman was interned by the enemy]; *Sgambati v. United States*, 2 Cir., 1949, 172 F.2d 297 [suit under Public Vessels Act and Suits in Admiralty Act

situation with which we are concerned here, that is, where the limitation period is enlarged subsequent to the incident giving rise to the cause of action but prior to the filing of suit.

The specific question of whether the amended limitation provisions of Section 913(a) should receive prospective or retrospective application has not, to our knowledge, been heretofore answered by any court. Nevertheless, decisions involving a similar 1934 amendment to time limitations of Section 22 of the Act uniformly held that a claimant's remedy, which had not expired under the former law, could be pursued under the 1934 amendment. Prior to May 26, 1934, the date on which Section 22 of the Act [33 U.S.C. § 922] was amended, that section limited review of a compensation award, sought to be modified because of a change in the claimant's condition, to the actual term of the award. The 1934 amendment extended the period to "one year after the date of the last payment of compensation."

 The D.C. Circuit, in rejecting the argument that the 1934 amendment was not to be given a retroactive effect, stated, "[T]he passage of the amendment neither creates new, nor destroys old rights. It applies only to the remedy, and from its date it permits the deputy to enlarge or diminish the former award to meet the

circumstances of a particular case." *New Amsterdam Casualty Co. v. Cardillo*, 1939, 71 App.D.C. 172, 108 F.2d 492, 493. Similarly, the Third Circuit rejected the contention that the 1934 amendment was inapplicable because it was adopted after the date of the accident at issue, noting that the amendment was "remedial, affecting matters of procedure" and clearly applicable. *Luckenbach S. S. Co., Inc. v. Norton*, 3 Cir., 1939, 106 F.2d 137, 138. In reaching the same conclusion, the First Circuit characterized Section 22 as remedial, calling for a liberal construction. *Bethlehem Shipbuilding Corporation v. Cardillo*, 1 Cir., 1939, 102 F.2d 299, 303. By analogy, amended Section 913(a) should receive similar treatment. This is in accord with the established principle, long ago recognized by the Supreme Court, that "statutes of limitation go to matters of remedy, not to destruction of fundamental rights." See *Chase Securities Corporation v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945), upholding and reaffirming its former decision in *Campbell v. Holt*, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885), which rejected the argument that a statute of limitations is a vested right.

Finally, Employer's reliance on decisions holding that the 1972 amendments are not retroactive is misplaced. The cases cited in support of this argument [5] all involve the

---

filed three years after expiration of limitations period]; *Coy v. Folsom*, 3 Cir., 1955, 228 F.2d 276 [claim filed under Social Security Act by deceased's widow approximately two years after eligibility period]; *Kruhmin v. United States War Shipping Admin.*, E.D.Pa., 1949, 81 F.Supp. 689 [suit under Suits in Admiralty Act, filed one year after expiration period]. *Equal Emp. Op. Com'n v. Louisville & Nashville R. Co.*, 5 Cir., 1974, 505 F.2d 610, is likewise inapposite, as there was no time limitation in the statute under consideration.

5. See *Martinez v. Dixie Carriers, Inc.*, 5 Cir., 1976, 529 F.2d 457; *McCawley v. Ozeanosun Compania, Maritime, S. A.*, 5 Cir., 1974, 505 F.2d 26; *Johnson v. Warrior & Gulf Navigation Company*, 5 Cir., 1975, 516 F.2d 73. In these cases we refused to give retroactive effect to the 1972 amendments to the Act insofar as they abolished the unseaworthiness action. *See also United States v. San Francisco Elevator Company*, 9 Cir., 1975, 512 F.2d 23. These

decisions comport with the legislative history indicating congressional intent to preserve for the longshoreman any cause of action, based on unseaworthiness, arising prior to the date of the 1972 enactment. *See* 118 Cong.Rec. H 10041–10043. It was in this context that the following statement by Congressman Eckhart (relied on by Employer) was made during congressional debate: "I will state, in answer to the gentleman [Congressman Burton], that of course this bill is not retroactive." 118 Cong. Rec. H 10043. The remark was evoked by Congressman Burton's question: "Does the gentleman from Minnesota (Mr. Quie) concur in the judgment of the bill managers and of the subcommittee chairman (Mr. Daniels) that any cause of action arising prior to the date of enactment of this legislation would be in no way aborted, frustrated, or reduced in any manner, shape or form?" Congressman Burton's reply echoed the affirmative answer by Congressman Quie. Employer's contention

judicially created substantive rights of longshoremen to sue for unseaworthiness under *Sieracki*,[6] and the subsequent *Ryan*[7] doctrine of indemnity by a shipowner, stemming therefrom, which decisions were congressionally overturned by the 1972 amendments to the Act. None of the cases relied on by Employer remotely pertains to the procedural limitation provisions contained in Section 913(a) as amended.

Employer contends that in the event that we should hold that Section 913(a) is retroactive, the claim filed on February 12, 1974 is nevertheless barred by the one-year limitation provisions contained in the first sentence of the section and that the exception provided by the amendatory language is unavailing to Washington for two reasons: (1) the added language applies only to claims for occupational diseases and not accidental injuries; and (2) contrary to the findings of the administrative law judge, there was no substantial evidence to show that Washington was unaware "of the relationship between the injury . . . and the employment" at the time of the accident.

## THE LAW PERTAINING TO OCCUPATIONAL DISEASES AND ACCIDENTAL INJURIES.

It is Employer's position that the amendment to Section 913(a) reflects an intent by Congress to apply a more liberal time standard for the filing of claims for latent injuries resulting from exposure to injurious stimuli, or so-called occupational diseases, as contrasted with the strict one-year limitation applicable to traumatic injuries such as Washington suffered. Employer contends that the necessity for this change was brought about by the courts' disparate treatment of accidental injuries on one hand and occupational diseases, on the other. In this respect, our attention is called

to *Pillsbury v. United Engineering Co.*, 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225 (1952), and *Kobilkin v. Pillsbury*, 9 Cir., 1940, 103 F.2d 667, aff'd 309 U.S. 619, 60 S.Ct. 465, 84 L.Ed. 983.

In *Kobilkin* the Supreme Court affirmed per curiam, by an equally divided Court, the Ninth Circuit decision which sustained the finding of the deputy commissioner rejecting a claim filed when the employee's disability developed more than a year after the date of accident. Subsequently, as the result of a circuit conflict between *Pillsbury v. United Engineering Co.*, 9 Cir., 1951, 187 F.2d 987, and *Great American Indemnity Co. v. Britton*, 1949, 86 U.S.App.D.C. 44, 179 F.2d 60, the Supreme Court granted certiorari in *Pillsbury v. United Engineering Co.*[8] The conflicting decisions, like *Kobilkin*, involved claims filed more than a year subsequent to the date of accident but within one year after claimants had become disabled as a result thereof. In affirming *Pillsbury v. United Engineering Co.*, the Court rejected the contention that "disability" was synonymous with "injury," stating that despite the humanitarian nature of the Act, it had no power to rewrite the statute of limitations at will and that

> Congress meant what it said when it limited recovery to one year from date of injury, and "injury" does not mean "disability."

342 U.S. at 200, 72 S.Ct. at 225. The Court further observed that

> Each of the claimants here was immediately aware of his injury, received medical treatment, and suffered continuous pain. We are not here dealing with a latent injury or an occupational disease.

342 U.S. at 199, 72 S.Ct. at 224.

Respondents-appellees (United States Department of Labor and Washington) contend that the instant case is distinguishable in several respects from *Pillsbury v. United*

---

that the remark envisions a congressional will to limit the procedural aspects of amended Section 913(a) is unfounded.

**6.** *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

**7.** *Ryan Stevedoring Co. v. Pan-Atlantic Steam. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

**8.** 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225 (1952).

*Engineering Co.* and *Kobilkin v. Pillsbury, supra.* They contend that unlike the foregoing cases, Washington was not aware of his "injury" or that it was accident-related until he saw Dr. Jackson on June 4, 1973, and moreover that the Supreme Court's rejection of the proposition that "date of injury" means "date of disability" is not determinative of Employer's position that "injury" means "accident." Appellees maintain that the more recent decisions of *Aerojet-General Shipyards, Inc. v. O'Keeffe,* 5 Cir., 1969, 413 F.2d 793 (an occupational disease case), and *Stancil v. Massey,* 1970, 141 U.S. App.D.C. 120, 436 F.2d 274 (an identifiable accident case) distinguish *Pillsbury v. United Engineering Co.* and limit it to its facts. In both *Aerojet* and *Stancil* compensation was allowed under the Act, despite the fact that claims were filed more than a year after the occurrence which precipitated the employee's disabling condition where, as here, there was no knowledge by claimant of the true nature of his condition or its causal connection with employment because of initial misdiagnosis.

■ It is unnecessary, however, to analyze the various nuances of case law prior to the 1972 amendment to Section 913(a). Whatever effect the Supreme Court decisions in *Pillsbury v. United Engineering Co.* and *Kobilkin v. Pillsbury* may have had on the instant case prior to the amendment, congressional mandate has now made it clear that the one-year limitation for filing a compensation claim shall not begin to run until the claimant is aware or should have been aware of the relationship between the injury and the employment. The plain language of the amendment allows for no differentiation between traumatic injuries and occupational diseases. The amending language refers simply to the word "injury."

The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the *injury* or death and the employment. (Emphasis supplied.)

"Injury" is defined in the Act as encompassing both accidental injury and occupational disease:

33 U.S.C. § 902(2) provides that

The term "injury" means *accidental injury* or death arising out of and in the course of employment, and such *occupational disease* or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment. (Emphasis supplied.)

Moreover, Employer's contention that Congress intended by the 1972 amendments to limit Section 913(a) to occupational diseases is not discernible from the legislative history of the amendment. To the contrary, the legislative history indicates that Congress rejected suggestions that the section should be so restricted.[9]

---

9. The following objection was made at the Senate hearings by a representative of the Shipbuilders' Council of America to the proposed amendment:

We suspect that the extension of the statute of limitations in both instances is predicated upon the concern for persons suffering from latent occupational diseases. If that is the concern, then why not limit the extension of the statute of limitations to occupational diseases? Clearly, an employee sustaining an injury, or his dependents in the event of death resulting therefrom, can reasonably be presumed to have knowledge thereof.

Another witness testified on behalf of the National Maritime Compensation Committee in opposition to the amendment:

The Act as it has been interpreted by the Supreme Court of the United States now requires the notice of a claim within 30 days and the filing of a claim within one year of the injury or death. *The purpose of the present amendment is to change this decision of the Supreme Court of the United States* and to permit the giving of notice and the filing of claim within 30 days or one year respectively *after the employee or the beneficiary is aware of the relationship between the injury or death and his employment.* This section is designed primarily to take care of those cases in which the physical disability does not manifest itself for some time after the date of the injury or when for some reason the causal relationship between the employment and the death is not known immediately. We do not believe that there is any basis on which to extend the limitations

Thus, from a reading of the legislative history and the statute itself, we hold that Congress intended to draw no distinction between the two types of injuries.

## THE EVIDENCE RELATIVE TO CLAIMANT'S "AWARENESS" OF HIS INJURY.

■ From our study of the record, we conclude that the administrative law judge correctly found that Washington was misled by the company doctors to believe that his condition resulted from arthritis not related to or resulting from the accident and that he became aware of his true condition only when he consulted with Dr. Jackson on June 4, 1973, thus starting the limitations period to run from that date rather than August 29, 1972, the actual date of the accident. The evidence which supports this

> insofar as the filing of claim or giving of notice is concerned. All this amendment is going to do in our opinion is open up the Act to an even more liberal interpretation of the time in which to give notice or to file a claim.
>
> . . .
>
> For example, if a longshoreman comes down with a bad back, and "recalls" he strained it many years before and didn't realize the strain might cause this trouble many years later, this testimony alone would be enough to cause most, if not all, deputy commissioners to hold that the notice and time for claim provisions of the act had not run if this amendment is passed. (Emphasis supplied.)

10. Washington testified at the hearing as follows:

> I felt real bad, but after the doctor told me I had arthritis I wanted to make it. I had a daughter in college and I kept trying to make it. I kept pushing and I really thought I had arthritis. My neck was paining me and across my shoulders was bursting. And I figured that was what it felt like when you had arthritis so I wanted to go to a specialist but I didn't know how to get one. So I went to a doctor and he showed me how to get connected with a specialist.

He further testified on cross-examination:

> I figured from working on the river I developed arthritis and I figured I didn't have arthritis before I got crippled.

Speaking of Dr. LaRose, Washington said:

> He talked to me, he say Washington you have a case of arthritis and the company don't treat for arthritis. You have to go to your family doctor.

11. Appellant calls our attention to the following cross-examination testimony of Washington in this respect:

finding is substantial.[10] Employer's attempt to show that Washington placed no reliance on Dr. LaRose's medical diagnosis finds little support in the record.[11] At most it expresses a doubt entertained by Washington, a doubt which was resolved only when he later received the correct diagnosis from Dr. Jackson.

■ The findings of the administrative tribunal in cases arising under the Act are not to be disturbed unless they are unsupported by "substantial evidence on the record considered as a whole," [12] and in making this determination, the policy of the Act that all doubtful questions are to be resolved in favor of the claimant, is to be considered.[13] The administrative law judge was impressed with the credibility of Washington. This assessment was his exclusive function.[14] Accepting this credibility deter-

> Q. Isn't it a fact, Mr. Washington, that you were quite amazed when Dr. LaRose told you that you had arthritis.
> A. I figured it was a joke because I never slept on no ground. I always good attention all my life and as far as I am concerned people that sleep in the park have arthritis.
> Q. Then you didn't quite believe that you had arthritis or that you could have arthritis?
> A. No. I don't believe I was so sure until I wanted to get a specialist to find out was this the truth. I knew—I figured it was a joke.
> Q. So, in other words, you figured you didn't have arthritis?
> A. Yeah. Well, along with the aches I was having I believe I had anything. I had to find out and I figured it took a specialist to find out what was wrong.
> Q. You figured you had something a lot worse than arthritis; isn't that right?
> A. I figured I had broke bones.

12. *O'Leary v. Brown-Pacific-Maxon, Inc.,* 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951); *Banks v. Chicago Grain Trimmers Association,* 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968); *Offshore Food Service, Inc. v. Benefits Review Bd.,* 5 Cir., 1975, 524 F.2d 967.

13. *Young & Company v. Shea,* 5 Cir., 1968, 404 F.2d 1059; *Jacksonville Shipyards, Inc. v. Perdue,* 5 Cir., 1976, 539 F.2d 533; *Strachan Shipping Company v. Shea,* 5 Cir., 1969, 406 F.2d 521.

14. *Banks v. Chicago Grain Trimmers Association,* 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968); *Todd Shipyards Corporation v. Donovan,* 5 Cir., 1962, 300 F.2d 741.

mination, we have no difficulty in concluding that Washington's awareness that he had a compensable claim did not come into existence until June 4, 1973.

SUFFICIENCY OF THE HEARING NOTICE.

 Although Employer does not contest the finding of total permanent disability, it contends that there was inadequate notice that the issue of disability would be considered at the hearing. There is no merit to this contention. The Memorandum for Formal Hearing shows that the extent and nature of Washington's disability was at issue. The first paragraph of the Memorandum recites that

> There is an issue as to whether or not the claimant also sustained a cervical strain in the same accident.

The third paragraph contains the following language:

> He maintains that he is still totally disabled and is to undergo additional surgical procedures.

The administrative law judge found that the Memorandum sufficiently recited the issues and facts in dispute. Nevertheless, to avoid any possible prejudice, he allowed defendants additional time in which to secure post-hearing medical evidence, which evidence was duly considered in the subsequent decision and order.

In summary, we hold that the provisions of amended Section 913(a) are retroactive, that they are applicable to accidental injuries such as occurred here, and that substantial evidence supports the findings of the administrative law judge. Accordingly, we affirm the decision and order of the Benefits Review Board.

AFFIRMED.