**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Charles MEDLIN, B.A. McFarland and B.E. McFarland, Defendants-Appellees.**

No. 84–1652.

United States Court of Appeals,
Fifth Circuit.

July 29, 1985.

James A. Rolfe, U.S. Atty., Lubbock, Tex., Judith Rabinowitz, Civ. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Huffaker & Green, Gerald Huffaker, Tahoka, Tex., for defendants-appellees.

Before CLARK, Chief Judge, BROWN, and POLITZ, Circuit Judges.

CLARK, Chief Judge.

## I

The United States appeals from the decision of the district court disbursing funds held in the court's registry to Charles Medlin, B.A. McFarland and B.E. McFarland (collectively referred to as "the Medlins"). Because the court properly awarded such payments according to the stipulation of the parties, we affirm.

## II

The Medlin litigation was one of twelve related suits, three of which are decided in the companion to this decision, *United States v. O'Neil*, 767 F.2d 1111 (5th Cir. 1985). Only those facts necessary to this appeal are discussed below. For a more thorough discussion, see this court's prior *O'Neil* decision at 709 F.2d 361 (5th Cir. 1983), and *United States v. Baston*, 706 F.2d 657 (5th Cir.1983), which disposes of seven of the remaining suits.

The Medlins participated in the Upland Cotton Price Support Program, 7 U.S.C. § 1444(e), sponsored by the United States Department of Agriculture (USDA). This program authorized the USDA to subsidize

cotton producers to help regulate the supply of cotton. The government alleged that in 1973, a number of farmers in Gaines County, Texas, including the Medlins, inflated their reported crop yields, and thus received excessive subsidy payments.

The government brought the twelve suits against the Gaines County farmers to recover the excess payments. It also placed these farmers on the Federal Debt Register (also known as the Claims Control Record), pursuant to 7 C.F.R. § 13. This register lists all those whom the government reasonably believes owes it money. Placement on the register does not preclude program participation, but the government may withhold payments to the debtor up to the disputed amount until liability for the claimed debt is resolved.

The Medlin and O'Neil defendants brought counterclaims against the government to have their names taken off of the Federal Debt Register, to receive cancelled cotton allotments, and to obtain the money withheld by the government. All parties in each of the twelve suits then moved for summary judgment. On April 3, 1981, the district court granted the motions of the Medlin and O'Neil defendants as to the government's claims, and severed their counterclaims to be tried at a later date. The district court also granted the defendants' motions in the seven Baston cases.

The government filed timely appeals in the Baston cases, but took no action in the Medlin or O'Neil suits. On September 15, 1981, the district court ruled that the April 3 judgments in the Medlin and O'Neil cases had become final due to the government's failure to appeal within 60 days. The United States moved for relief under Rule 60(b), claiming it believed the judgments were not final due to the pending counterclaims. The district court denied such relief. The court also granted summary judgment on the Medlins and O'Neils' counterclaims.

The government appealed from this decision. Before this court rendered a decision, however, the Medlins and the United States entered into a stipulation which provided that the United States would pay into the registry of the court all funds earned by the Medlins under the Upland Cotton Program but withheld because of the present dispute, and that the Medlins would make an additional payment into the registry if needed to bring the total of registry funds to $220,500.00. The deposited funds were to be placed at interest pending the resolution of all issues and the orders of the court. The stipulation provided that the government would remove the Medlins' names from the Federal Debt Register and resume their cotton allotment subsidies. All sums in excess of any amount owed to the United States under a final judgment would be released to the Medlins. Finally, the stipulation provided that the judge could enter an order consistent with the stipulation which would bind the Clerk of Court and all parties. This order was duly entered. A copy of the stipulation and the court's order is reprinted in the appendix to this opinion. The government then deposited approximately $215,000 representing funds due the Medlins for subsequent years, and the Medlins contributed over $5,400 to the registry funds.

This court affirmed the district court's ruling that the government's appeal was untimely and upheld the rejection of the Rule 60(b) motion. The panel, however, remanded to the district court to determine whether jurisdiction of the counterclaims was properly in the district court or the Court of Claims.

While on remand, the Medlins moved to voluntarily dismiss their counterclaims and to withdraw the funds from the court's registry, pursuant to the joint stipulation of the parties. The court found it unnecessary to reach the jurisdiction issue, because the counterclaims had been dropped. Thus, it found the stipulation related only to the main cause of action for which jurisdiction was unquestionable. The court then held that under the terms of the stipulation, the Medlins were entitled to all of the funds in the court's registry, because the government was to take nothing under

its suit. The United States now appeals this decision, but does not object to the voluntary dismissal of the counterclaims.

### III

■ The United States first contends the district court lacked jurisdiction to award over $200,000 to the Medlins. It argues that under the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491, exclusive jurisdiction of all claims which could result in payments from the treasury in excess of $10,000 rests with the Court of Claims. *See Graham v. Henegar,* 640 F.2d 732 (5th Cir.1981). The court, it contends, overstepped its authority by not dismissing the counterclaims and returning the registry funds to the parties who advanced them.

The United States asserts that before the stipulation, the district court's jurisdiction to award relief on the counterclaims was limited to offset or recoupment. *United States v. Shaw,* 309 U.S. 495, 504–05, 60 S.Ct. 659, 663, 84 L.Ed. 888 (1940); *EEOC v. First National Bank of Jackson,* 614 F.2d 1004, 1007–08 (5th Cir.1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 342 (1981); *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967). The United States further asserts that the stipulation has no effect on this case, for parties may not by consent confer subject matter jurisdiction on a court that otherwise lacks authority to hear a case. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). Thus, it argues the court lacks jurisdiction despite the stipulation.

The government concludes its jurisdictional argument by contending that the court has, in effect, awarded affirmative relief to the Medlins based solely on the USDA's claims. Because the Medlin counterclaims had been dropped, it contends the court lacked a proper basis upon which to award relief to them. We disagree.

While the Tucker Act grants exclusive jurisdiction to the Court of Claims for judgments against the United States in excess of $10,000, the judgment in this suit is not a judgment against the United States. By entering into the stipulation, the parties transformed this case from a suit to recover funds from the Treasury to a case distributing disputed funds paid into the court's registry subject to the court's order. In the latter circumstances, the Tucker Act does not apply to prohibit jurisdiction in the district courts. *Accord Industrial Indemnity, Inc. v. Landrieu,* 615 F.2d 644, 646 (5th Cir.1980) (disputed funds already severed from Treasury). The court has both the inherent power and in this case the stipulated authority to distribute the funds held in its registry. *See Aron v. Snyder,* 196 F.2d 38 (D.C.Cir.1952), *cert. denied,* 344 U.S. 854, 73 S.Ct. 92, 97 L.Ed. 663 (1952). *Accord Updike v. West,* 172 F.2d 663, 666 (10th Cir.1949), *cert. denied,* 337 U.S. 908, 69 S.Ct. 1050, 93 L.Ed. 1720; Fed.R.Civ.P. 67; 28 U.S.C. §§ 2041, 2042.

The stipulation did not constitute a vehicle to avoid the terms of the Tucker Act. Rather, it was a mutual attempt by the parties to resolve their legal dispute with as little disruption as possible. The USDA acknowledged it was withholding funds that the Medlins had earned. The United States brought this action to determine its right to retain these funds. It has authority to enter into settlement negotiations on behalf of its claims and to resolve legal disputes without resort to full trial on the merits. *See* 5 U.S.C. § 301 (granting both the USDA and Department of Justice authority to perform each department's business); and 28 U.S.C. § 2414. The United States entered into the stipulation pursuant to that authority.

Finally, the court did not award affirmative relief to the Medlins based upon resolving the USDA's claims against the farmers. Rather, it distributed funds held in its registry according to the terms of the parties' joint stipulation. The stipulation redefined the rights and obligations of the parties as to their claims before the court. The court was instructed to determine the amount due the government and to return the remainder, if any, to the Medlins. After its decision to award the government nothing

became final and all appeals were exhausted, the court had jurisdiction to disburse the funds which it held. We find no error here.

## IV

### A

■ The United States also contends the district court erred in construing the stipulation. First, the government asserts that the Medlins' voluntary dismissal did not constitute a final adjudication by final judgment as was required by the stipulation before the funds could be disbursed. They contend that both their action and the Medlins' counterclaims had to be finally adjudicated, and that the voluntary dismissal without prejudice under Fed.R.Civ.P. 41(a)(2) and (c) is not a final adjudication of the counterclaims. Instead, they claim that a dismissal without prejudice "leaves the parties where they would have stood had the lawsuit never been brought." *Selas Corp. of America v. Wilshire Oil Co. of Texas,* 57 F.R.D. 3, 6 (E.D.Pa.1972).

The district court held, however, that the final adjudication of the claims of the United States, when coupled with the dismissal of the counterclaims, was a final adjudication of the rights of the parties in this case under the terms of the stipulation. No claims were left for the court to adjudicate, and all that remained was to determine the proper distribution of the funds. While voluntary dismissal is not a final judgment for all purposes, the district court found that the stipulation contemplated that the funds would be disbursed when all claims before the court had been resolved despite the potential that the Medlins would revive their counterclaims.

The court reasonably believed the counterclaims became moot because the funds would be disbursed, the Medlins' names had already been taken off the Federal Debt Register, and they were again receiving their cotton allotments under the Upland Cotton Price Support Program. When this occurred, the Medlins could not reinstitute their claims. The district court's interpretation of the final adjudication requirement of the stipulation is supported by the evidence and not clearly erroneous.

### B

■ The United States finally contends that the court erred in awarding all the disputed proceeds to the Medlins. The stipulation provided that the "excess of any amount owed to the [USDA] should be released to the defendants in accordance with the final judgment." The district court distributed all funds to the Medlins because the government was to "take nothing" from them on its claims, due to its failure to timely appeal. The United States contends that this default based on the appeal limitations period does not extinguish the Medlins' alleged debt to the government. *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945); *Cooper Stevedoring of Louisiana, Inc. v. Washington,* 556 F.2d 268, 272 (5th Cir.1977). Rather, it only means the USDA cannot collect these funds from the parties through affirmative court action. They contend they are still entitled to collect the debt administratively, by withholding the cotton subsidies due the Medlins for later years. *See United States v. Missouri Pacific R.R. Co.,* 250 F.2d 805, 808 (5th Cir.), *cert. denied,* 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958); *Union Pacific R.R. Co. v. United States,* 137 Ct.Cl. 267, 147 F.Supp. 483, *cert. denied,* 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 858 (1957). The United States concludes that the court should not have disbursed the funds to the Medlins, but rather should have returned them to their original source. It contends that the stipulation could not operate because no final adjudication occurred. Thus, because a condition precedent to the stipulation failed, the government asserts that under the Restatement (Second) of Contracts § 225, the stipulation became frustrated and the court should have returned the parties to the status quo. We disagree.

Had the United States never executed the stipulation, its arguments would have

persuasive force. *See O'Neil*, at 1111. The stipulation, however, modified the right of the government to collect on this debt administratively as to the funds held in the court's registry. The United States placed these funds in the registry of the court, to be distributed by the court upon the conclusion of this litigation. Once the court finally adjudicated the rights of these parties in the litigation before it, the parties had instructed the court to distribute these funds according to those rights. The United States cannot now complain that by entering into this stipulation it has inadvertently foreclosed another avenue of relief. Both parties assumed the burdens as well as the benefits of the stipulation.

The district court's distribution was based on a correct interpretation of the plain language of the stipulation. The court's findings are supported by the evidence and are not clearly erroneous.

## V

The judgment of the district court is AFFIRMED.

## APPENDIX

### STIPULATION OF THE PARTIES

This agreement this day entered into by and between the United States of America, as Plaintiff, in the above styled and numbered cause, and Charles Medlin, B.A. McFarland and B.E. McFarland, Defendants in said above styled and numbered cause, and entered into the following stipulation, to-wit:

1.

This suit involves a claim by the United States of America that the Defendant Charles Medlin is indebted to the Plaintiff in the sum of $131,530.55, together with interest thereon since the date that said funds were paid to the Defendants under the Upland Cotton Program for the year 1973, and the costs of this litigation. Included in said claim is the sum of $43,-752.98, plus interest and costs, for which Defendant Charles Medlin shares liability, jointly and severally, with the Defendants B.A. McFarland and B.E. McFarland.

2.

For the year 1974 and all years since said date, the respective Defendants have been placed on the Claims Control Record filed with the Department of Agriculture, and by reason thereof, any and all funds earned by them for all Government agricultural programs since 1973 have been withheld pending the outcome of this litigation.

3.

The parties do stipulate and agree that all funds from all Government agricultural programs for which Defendants have qualified will be forthwith released and paid into the registry of this Court, subject to this stipulation and the orders and control of the Court.

4.

All parties hereto further stipulate and agree that when the sum of at least $220,-500.00 has been paid into the registry of said Court (whether from Government program funds withheld or from such funds plus such additional amounts as may be required to be paid by the Defendants so that there will be $220,500.00 in the registry of said Court), all of the Defendants' names will be removed from the Claims Control Record.

5.

If the sum total of the funds to be paid into the registry of the Court by the Government, as hereinbefore set out in Paragraph 4, is in excess of said sum of $220,500.00 the Clerk shall thereupon disburse the excess to the Defendants, Charles Medlin, B.E. McFarland and B.A. McFarland, jointly.

6.

The Clerk of said Court shall purchase with said $220,500.00, a 30-day Certificate of Deposit, bearing interest at the highest rate allowed by law at the First National Bank of Lubbock, Texas, and shall continue to renew said Certificate of Deposit from time to time during the pendency of this litigation. Said Certificate(s) of Deposit shall be held by said Clerk until all issues

involved in the above entitled and styled cause have been disposed of, and said $220,500.00, together with any accrued interest thereon shall at all times remain subject to the orders of this Court.

7.

As hereinbefore set out, said funds shall be subject to the orders of the Court, and should the Plaintiff prevail in this lawsuit against one or more of the Defendants, jointly and severally, said funds shall be available and be used for the payment of any judgment as may be recovered by the United States of America against any of the Defendants herein named, individually, jointly or severally. Such payments shall be made notwithstanding the fact that the contribution of any one of the Defendants may be greater than his adjudged liability.

Interest due to the United States, should the United States prevail, shall be computed as follows:

(a) Interest due up to the date on which said money is deposited into the registry of the Court, shall be calculated in accordance with program regulations set forth at 7 C.F.R. § 722.-812(k) (1974 edition), which provides for interest at the rate of six (6) percent per annum on the amount of the refund from the issue date of the sight draft.

(b) Interest due on and after said money is deposited into the registry of the Court shall be determined by the actual interest earned by said money, from the date of deposit to the date payment if ordered by the Court.

Should the Plaintiff recover a judgment in excess of the available funds in the registry of the Court, this stipulation shall not in anywise jeopardize the rights of the Plaintiff to recover the deficiency by execution or any other means available to the Plaintiff.

8.

This stipulation, and the Order to be entered consistent herewith, shall never be considered as an admission on behalf of any of the parties hereto, and shall be without prejudice to the rights of all parties.

9.

When the hereinabove numbered and styled cause has been finally adjudicated by final judgment, any and all funds deposited into the registry of the Court in excess of any amount owed to the Plaintiff, if any, under the terms of said final judgment and this stipulation, shall forthwith be released to the Defendants, jointly.

10.

When this stipulation has been signed by all of the parties hereto and filed with the Clerk of the Court, the Judge shall issue an order consistent with the terms and provisions hereof, which shall forthwith be binding upon the Clerk of said Court and all the parties hereto.

(Signatures omitted)

ORDER

On this 9th day of April, 1982, came on to be considered the stipulation of the parties in the above styled and numbered cause, this day filed with the Clerk of this Court, and the Court having considered the same, finds that the same should be in all things approved.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that said Stipulation be and the same is hereby approved and IT IS FURTHER ORDERED that said Stipulation shall be binding on all of the parties, and all of said parties, together with the Clerk of the Court, shall abide by the same.

(Signature omitted)